EVANGELICAL LUTHERAN CHURCH, Respondent, vs.
SHAWANO COUNTY and another, Appellants.

*November 30—December 30, 1949.*

*O. Strossenreuther,* district attorney, for the appellant Shawano county, and *L. J. Brunner* of Shawano, for the appellant town of Wittenberg.

For the respondent there was a brief by *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Howard N. Lehner.*

BROWN, J. In brief, the court found the ultimate fact to be that the Home was an orphan asylum or orphan home. This must stand unless contrary to the great weight and clear preponderance of the evidence.

Omitting as unessential here such matters as descriptions of real estate, incorporation, and facts relative to the care given the inmates of the Home, it was stipulated that "The purpose of the plaintiff is to teach religious principles to orphans, half orphans, and neglected and dependent children, . . ." and that plaintiff actually did, in the facilities of the Home, shelter, clothe, and care for such children whose number and status, year by year, were as follows:

|      | No living parent | One living parent | Two living parents |
|------|------|------|------|
| 1938 | 4 | 19 | 48 |
| 1939 | 4 | 24 | 35 |
| 1940 | 1 | 18 | 32 |
| 1941 | 1 | 19 | 36 |
| 1942 | 3 | 36 | 47 |
| 1943 | 2 | 36 | 37 |
| 1944 | 2 | 34 | 33 |
| 1945 | 4 | 31 | 35 |

The parties further stipulated that from 1908 to 1938 the township had treated the plaintiff's property as entirely exempt from taxation; from 1938 to 1945 all of it except

the buildings and ten acres was assessed and the plaintiff
refused and neglected to pay the taxes, claiming it to be
entirely exempt. During such years plaintiff was licensed
as a child welfare agency under secs. 48.35 to 48.42, Stats.,
to provide for neglected and dependent children, whose
number at any one time was limited to fifty-five. The Home
was open at all times to receive any orphan tendered to it
provided there was room within such limits.

Upon these stipulations the trial court made findings of
fact setting forth the assessments, failure to pay taxes under
claim of exemption, the issue of tax certificates and tax
deed, and the charitable nature of the institution, none of
which facts or findings is in dispute. Concerning the status
of the inmates, it made findings which corresponded to the
stipulation, except that in 1938 the finding was that there
were thirty-seven children with both parents living, whereas
it had been stipulated that there were forty-eight; in 1939
that there were thirty-two, while the stipulation was thirty-
five; and in 1945 that there were fifteen, though thirty-five
were stipulated. There is no evidence on which the court
could make such alterations and the stipulated numbers must
govern if the variance is material. The court further found
that when, from 1908 to 1938, the property was not taxed,
it was a practical construction of the statute by the proper
town and county officials. Of course it was not stipulated
that the Home was or was not an orphan home or asylum
and the trial court's finding that it was is a conclusion of
ultimate fact drawn from the several evidentiary facts. The
appeal tests such conclusion.

There was no support in the stipulation for the finding
that it was common knowledge in the vicinity that the estab-
lishment was an orphans' home but we do not regard either
this or the so-called practical construction of the statute as
material. If this Home was an orphanage, it was entitled
to complete exemption from property taxes; if it was not,

contrary local opinion or practice could not prevent the public, through its town and county governments, from correcting the assessment. Neither tax liability nor exemption is established by prescription.

The fundamental principles of the tax-exemption cases are that taxation is the rule and exemption the exception; exemption statutes are to be construed most strongly against the exemption; and to be exempt the taxpayer. must bring himself clearly within the exact terms of the exemption statute. These are so well established and are so often stated that citations are unnecessary.

It is clear, as respondent's counsel state in their brief, that the Home is a benevolent institution which "cares for children without parents, children with but one parent alive, and dependent children, all without discrimination." But the legislature did discriminate. It granted a larger exemption in favor of orphans than it granted in favor of other dependent children unless they might be in the Home of the Friendless or the Wisconsin Home and Farm School. The stipulated figures on the Home's population unmistakably show that the use made by plaintiff of its property for the care of children who were not orphans cannot be claimed as incidental, negligible, or inconsequential. In fact, that was the greater part of its activity. Ten per cent of non-exempt use was sufficient to take away a claimed exemption in *Cardinal Publishing Co. v. Madison* (1932), 208 Wis. 517, 519, 243 N. W. 325. In that action this court, by Mr. Chief Justice ROSENBERRY, said:

"It is evident that the use made by the plaintiff of its property for nonexempt purposes cannot be claimed as incidental, negligible, or inconsequential. It is clearly substantial.

"It is sought here to justify the plaintiff's position upon the theory that the property used for the nonexempt purposes was property which was necessarily employed by the plaintiff for purposes which are exempt and that the use of the

property when not employed for purposes which are exempt should not destroy the exemption. This construction would create an entirely new exemption statute."

Here the proportion of nonorphans is greater than fifty per cent of the whole. Such use of its property qualifies the Home for the limited rather than the total exemption.

Both parties have called our attention to three opinions of the attorney general and to the amendment of the exemption statute in 1945. Respondent deduces therefrom a conclusion that the legislature has intended all along that this establishment was to be entirely exempt from property taxation. We have examined these matters and find they support a contrary conclusion. The first such opinion is dated August 25, 1931, and is found in XX Op. Atty. Gen. 685. It was given in answer to a question which stated that this institution was an orphan home and asked whether its property would be considered "a lot" under the provisions of sec. 70.11 (15), Stats. The answer was that the "lot" mentioned by the statute referred only to the Home of the Friendless and all the property of an orphan home was exempt. The second opinion is dated March 7, 1939, and is reported in XXVIII Op. Atty. Gen. 154. The Home had purchased additional property. The inquiry again assumed that it was an orphanage and asked whether the fact that the Home was owned by a nonresident corporation made a difference in the exemption. The attorney general replied that there was some doubt, citing authority, but concluded that the residence of the owner made no difference. Neither opinion has any persuasive effect upon the question before us because in its statement of fact that the place was an orphans' home the inquiry assumed the point here to be proved. The third opinion is dated December 4, 1944, and appears in XXXIII Op. Atty. Gen. 254. For the first time facts concerning the method of operation and the number and character of the children were submitted. The query was whether

or not the Home was an orphanage. That is exactly the question before us. The facts stated do not differ in any essential from those stipulated here. The attorney general, by Harold H. Persons, assistant attorney general, answered (p. 257):

"The character of an institution is judged upon the basis of its actual operation and its predominant activity is controlling as determinative thereof. [Authorities cited.]

"A viewing of the facts as above set forth in accordance with these principles results in the conclusion that this institution is a home for children generally. While· some of the children cared for are orphans they do not predominate. Actually the orphans are in the minority and the predominance is of children who are not orphans. . . . Thus, laudable as is the conducting of a home for needy children, that does not constitute the institution in question an 'orphan asylum' or 'orphan home.' "

He advised that the Homme Children's Home did not meet the qualifications necessary for it to be accorded exemption under sec. 70.11 (15), Stats. We consider his opinion a sound statement of the law upon the facts before us now. We note, also, that in the first two requests for opinions the name of the institution is Homme Orphan Home, while in the last it is Homme Children's Home, as at present. Since the change of name was not referred to by counsel and is not one of the facts stipulated, we do not care to give weight to it but we may suspect that with the times the nature of the place had changed and was reflected both in the adoption of a new and more nearly descriptive name and in the more limited exemption allowed by the town. The former name also explains the trial court's finding, without support in the stipulation, that in common knowledge this was an orphan home and was held out to be one.

Respondent, in brief and in oral argument, urged that the amendment of the statute by the 1945 legislature promptly after the attorney general's third opinion indicates the

legislature's belief that the Home was exempt under the old law and the amendment is its attempt to say so. We cannot agree, especially as the legislature had remained calm over the actual taxation of the property in all the years since 1938. If "practical construction" has any value in this case, here is the place to apply it.

The statute, as amended in 1945, reads as follows:

"70.11 *Property exempt from taxation.* The property in this section described is exempt from taxation, to wit: . . . .

"(15) All the real and personal property of any children's institution licensed for the care of dependent, neglected or delinquent children under sections 48.35 to 48.42 while the same is actually used for such purposes, and the real estate of the Home of the Friendless in the city of Milwaukee, not exceeding one lot, while the same is actually used for such home."

Whereas, to qualify for full exemption, formerly, an orphanage was required and a license was not, presently, no orphanage is required and a license is. It is distinctly a change in legislative policy, in keeping with modern conditions and modern recognition of the fact that an institution sheltering children neglected or abandoned by their parents is hereafter to be considered as worthy of assistance as one maintained for orphans.

Respondent also asks us to take note of the legislative history of the statutes. We have done so. Until 1919 there was no full exemption for orphan asylums or orphan homes *per se*. Such exceptions as there were had been by virtue of specific enactments, such as the total exemption granted to Milwaukee Orphan Asylum by sec. 1038 (33), Stats. In 1919 this section was enlarged by amendment to exempt "all the real and personal property of any orphan asylum or orphans' home located in the state so long as the same is actually used for such home." So it stood until 1921 when the Home of the Friendless, which had previously been specifically exempt under sec. 1038 (16), was added to

sec. 1038 (33), and the section was renumbered 70.11 (15). In 1941 the section received another addition by adding: "For the purposes of this subsection the term 'orphan home' shall include the Wisconsin Home and Farm School, at Dousman." In 1945 the statute was amended to its present form. Respondent says this was solely to clarify the exemption on this property which had been clouded by the attorney general's opinion in December, 1944, but the history of the statute shows when the legislature thought a particular institution deserved full exemption its legislation dealt only with the institution concerned. The amendment of 1945 of sec. 70.11 (15) made a comprehensive revision in the requirements for the exemption of all institutions caring for children.

Our examination of the evidence and the law applicable thereto compels the conclusion that, whatever may have been the fact in the years preceding 1938, in that year and afterward the Home was conducted for children generally and orphanhood was no more than a coincidence. Respondent has not brought itself clearly within the terms of the statute under which it claims exemption and we have concluded that the trial court's finding of ultimate fact that the Homme Children's Home was an orphan home or orphan asylum within the meaning of sec. 70.11 (15), Stats., as it existed between 1938 and 1945, is against the great weight and clear preponderance of the evidence. Accordingly, the judgment must be reversed.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.

MARTIN, J., took no part.

HUGHES, J. (*dissenting*). There is no doubt that the issue in this case is one of fact. The trial court held that the Homme Children's Home, operated by the plaintiff

religious corporation, is an orphanage, so as to be entitled to the exemptions afforded by sec. 70.11 (15), Stats.

This section of the statutes was substantially the same from the time this institution was founded in 1908 until amended in 1945. It provided exemption from taxation for:

"(15) All the real and personal property of any orphan asylum or orphan home in this state, and the real estate of the Home of the Friendless in the city of Milwaukee, not exceeding one lot, while the same are actually used for such homes. For the purposes of this subsection the term 'orphan home' shall include the Wisconsin Home and Farm School, at Dousman."

The 1945 legislature, by ch. 386, amended the statute to provide as follows:

"(15) All the real and personal property of any children's institution licensed for the care of dependent, neglected or delinquent children under sections 48.35 to 48.42 while the same is actually used for such purposes, and the real estate of the Home of the Friendless in the city of Milwaukee, not exceeding one lot, while the same is actually used for such home."

It is conceded by appellants that since the 1945 amendment respondent's property is literally exempt.

Prior to 1938 the town boards of the town of Wittenberg never levied any assessment. The only years in dispute are those from 1938 to 1945.

The stipulated facts upon which the case was submitted contain no data as to the type of children cared for by the Home from the time it was founded in about 1908 until 1938.

The children from the Home were sent to public schools from 1940 to 1945. The state paid tuition for all of those from Wisconsin; the plaintiff paid for out-of-state children.

The income of the Home came from four sources. (There was some variance in the figures, but 1942 is adequate to typify the entire period.) They were: (1) Earnings from

the farm, fifteen per cent; (2) contributions by plaintiff corporation, sixteen per cent; (3) contributions by counties from which children were committed and from parents, thirty-six per cent; and (4) contributions from private benefactors, thirty-three per cent. There was no breakdown of contributions from parents and those from counties.

During the years involved plaintiff was licensed as a home for dependent children.

The trial court held that during this period the Homme Children's Home was an orphan's home entitled to the exemption. This finding of the trial court must stand unless contrary to the great weight and clear preponderance of the evidence.

The decision of the trial court is supported by the practical construction of the statute by the town board in exempting the Home from taxation for thirty years prior to 1938.

The rule is stated in 59 C. J., Statutes, p. 1024, sec. 608:

"A practicable construction of a statute is not conclusive on the courts, but if unvarying for a long period of time, it should be disregarded only for the most cogent reasons."

This rule was adopted very early by the Wisconsin court.

"The general understanding of a law and constant practice under it for so long a period by all the officers of government whose duty it has been to execute it, unquestioned by any suit brought or public or private action instituted to test or settle the construction in the courts, ought to be very strong, if not conclusive, evidence of its true meaning and application, and that they are such as it has thus received." *Scanlan v. Childs* (1873), 33 Wis. 663, 666.

In *Wright v. Forrestal* (1886), 65 Wis. 341, 348, 349, 27 N. W. 52, which involved the validity of tax certificates, the court said:

"The construction given to a statute by the body of men or officers who are directed to act upon it is always entitled

to weight, and their construction should not be overridden by the courts, unless it be contrary to the clearly expressed meaning of the law."

In considering construction of a statute in *Marinette, T. & W. R. Co. v. Railroad Comm.* (1928), 195 Wis. 462, 465, 218 N. W. 724, Justice OWEN, speaking for the court, said:

"If we were presently disposed to consider the proper construction of the statute doubtful, this practical construction of the statute long followed by the railroad commission with the apparent acquiescence of the legislature as well as those affected thereby, would be entitled to great weight." See also *Estate of Week* (1919), 169 Wis. 316, 172 N. W. 732; *State ex rel. Board of Regents v. Zimmerman* (1924), 183 Wis. 132, 197 N. W. 823; *State v. Johnson* (1925), 186 Wis. 59, 202 N. W. 319.

At the turn of the century institutions such as plaintiff's were primarily concerned with the care of "orphans." "Neglected children" and "dependent children" were terms which were not in use. The children of a needy or indigent or reckless parent were themselves considered indigents, and if cared for at all, it was probably at the hands of some individual Samaritan or with poor relief administered by some town chairman according to his own lights, which extended only to the most essential material wants and with emphasis on economy for the township.

The removal of a child from the custody of neglectful parents for the child's moral welfare as well as physical well-being is largely a social development of the last thirty years.

For all practical purposes a child who has been removed from the custody of his parents because of their unfitness, or one who has been abandoned by irresponsible parents, is as much an orphan as the child whose parents are dead.

It is true that the state, through threat of imprisonment for nonsupport, may wring an occasional contribution from

a reluctant father. This does not, however, in my opinion, alter the status of the child nor of the institution which furnishes principal care for such child.

This growth in the field of social work and extension of public and charitable assistance to the neglected and dependent child has been gradual. Secs. 48.35 to 48.42, Stats., known as the Children's Code, were adopted in 1931 and thereafter.

The practical association of destitute children and orphans in the same class in actual treatment was further recognized by the legislature in the amendment to sec. 70.11 (15), Stats., in 1945. Such action on the part of the legislature did not constitute a change of policy with respect to exemptions, but only an utterance of a policy long in practice.

The judgment of the trial court is well supported by the facts and should be affirmed.

I am authorized to say that Mr. Chief Justice ROSENBERRY concurs in this opinion.