COLUMBIA HOSPITAL ASSOCIATION and others, Plaintiffs: ST. LUKE'S HOSPITAL ASSOCIATION, INC., Plaintiff and Respondent, v. CITY OF MILWAUKEE, Defendant and Appellant.

*June 6—June 30, 1967.*

For the appellant there was a brief by *John J. Fleming,* city attorney, and *Richard F. Maruszewski, John F. Cook,* and *Maurice L. Markey,* assistant city attorneys, and oral argument by *Mr. Maruszewski.*

For the respondent there was a brief by *Howard T. Foulkes, Richard W. Cutler,* and *Samuel J. Recht,* attorneys, and *Wickham, Borgelt, Skogstad & Powell* and *Brady, Tyrrell, Cotter & Cutler* of counsel, all of Milwaukee, and oral argument by *Mr. Recht.*

HALLOWS, J.   In 1957 the legislature enacted sec. 70.11 (4m), Stats.,[1] which exempts from *ad valorem* taxes property of nonprofit hospitals which is "used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured or deformed, . . ." There is no question St. Luke's is a nonprofit hospital of more than 10 beds and is devoted primarily to the diagnosis, treatment, and care of the sick. No claim of exemption is made under sec. 70.11 (4) as a benevolent institution. The narrow issue is whether the properties involved are used exclusively for the purposes of the hospital within the meaning of sec. 70.11 (4m), and this question requires us to examine both the nature of the property and the purposes of the hospital.

The property involved consists of five homes, one duplex and two four-unit apartment buildings. The homes are in the immediate vicinity of the hospital; all but one

---

[1] "70.11  **Property exempted from taxation.**  The property described in this section is exempted from general property taxes:

". . .

"(4m)  NONPROFIT HOSPITALS.  Property which is used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or deformed, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. The exemption herein granted shall be effective and apply to assessments of property for taxation made, or permitted to be made pursuant to s. 70.44, in the year 1957 and subsequent years."

are unfurnished and all are rented at a low rate. One home is occupied by the director of building services, who is in charge of general hospital maintenance. He works 40 hours a week but is on call at all times. Another home is occupied by the director of nurses who is responsible for all nursing activities at the hospital, involving about one half of all the hospital employees. Her residence near the hospital is considered by the hospital authorities to be necessary as she is frequently called to the hospital during her off-duty hours. The upper unit of the duplex building is occupied by the electronic technician and his family. His duties consist in helping to set up heart-catheterizing equipment and, if heart surgery is performed, maintaining electronic equipment to monitor and sustain the patient's life. It is considered advantageous to the hospital to have him nearby. The trial court considered the occupancy of these close-by properties to contribute to the efficient performance of the occupants' duties and mainly for the benefit of the hospital and therefore held the properties were used exclusively for the purpose of the hospital.

The two four-unit apartment buildings are about two miles from the hospital and contain furnished apartments occupied by married interns and married resident doctors. Three unfurnished homes in the immediate vicinity of the hospital are also rented to married interns and resident doctors. The trial court held these properties were exempt from taxation because such housing was reasonably necessary to the internship and residency programs of the hospital. The trial court also held the lower unit of the duplex building which was occupied by the nursing supervisor (the upper unit being occupied by the electronic technician) and a duplex building, the lower of which was occupied by a nursing supervisor and her family and the upper unit by the operating room surgical nurse, were not exempt from taxation. The proof showed no necessity existed for such persons to

live in the immediate vicinity of the hospital for its benefit and such occupancy was more for the occupants' convenience than for that of the hospital. St. Luke's has not appealed from this ruling. It is to be noted that the duplex occupied upstairs by the electronic technician and downstairs by a nursing supervisor was partly exempt and partly taxable and the trial court declared the entire assessment null and void leaving it to the city to make a proper partial assessment against the lower unit only. The city claims this is error and the whole duplex must be taxable.

St. Luke's hospital is located on West Oklahoma avenue in the city of Milwaukee and is a complete integrated modern hospital of over 500 beds. Besides devoting itself primarily to the diagnosis, treatment and care of the sick, it also performs essential functions in the area of medical education and research. It has numerous training and research programs and offers American Medical Association approved internship programs and also residencies in obstetrics and gynecology, surgery, medicine, pathology and radiology. St. Luke's is known as a teaching hospital and is one of fourteen in Wisconsin offering an internship program where the one-year internship prerequisite to practicing medicine in Wisconsin can be fulfilled. St. Luke's is more than a building with patient rooms and operating rooms. It is primarily a service organization fulfilling the needs of patients, doctors, and the public generally and in order to do this, it must offer a multitude of services and facilities to treat all the ills of the human body. To function properly it must have not only physical facilities and unlimited equipment but a large nursing, administrative and medical staff. While hospitals differ in their general services and specialties, many large modern hospitals like St. Luke's have internship and residency programs whereby doctors may become more highly skilled in their profession and the care and service rendered by the hospital improved.

In considering this exemption problem we cannot restrict our consideration to the primary purpose of a hospital or to a typical small hospital offering limited facilities. The language of the section does not so limit the meaning of the word "hospital." In fact, sec. 70.11 (4m), Stats., recognizes the primary purpose of an exempted hospital and by that token recognizes such a hospital may have other legitimate purposes. The section has carefully expressed the exemption in terms of a hospital whose primary purpose is diagnosis, treatment and care and this contemplates that a hospital may have other functions and objects, whether they be directly or indirectly associated with the care of the sick. The language of the section refers to property used exclusively for the purposes of the hospital. This means any and all purposes, not just for the primary purpose of care, diagnosis or treatment.

It is argued this section must be given a strict construction and it is true this is the general rule applicable to the construction of tax-exemption statutes. *Madison Aerie No. 623 F. O. E. v. Madison* (1957), 275 Wis. 472, 476, 82 N. W. (2d) 207; *Katzer v. Milwaukee* (1899), 104 Wis. 16, 21, 79 N. W. (2d) 745, 80 N. W. 41; *Methodist Episcopal Church Baraca Club v. Madison* (1918), 167 Wis. 207, 211, 167 N. W. 258. However, a strict construction is nonetheless a construction, and an exemption statute need not be given an unreasonable construction or the narrowest possible construction. A "strict but reasonable" construction seems to be the pithy and popular statement of the rule. See *State ex rel. Spillers v. Johnston* (1908), 214 Mo. 656, 113 S. W. 1083; *Cedars of Lebanon Hospital v. Los Angeles County* (1950), 35 Cal. (2d) 729, 221 Pac. (2d) 31, 15 A. L. R. (2d) 1045. The difference between a liberal and a strict construction is best illustrated in those cases where the meaning of the language expressing the objective intent of the legislature is doubtful; in such cases, any doubt under the strict construction rule must be resolved against the exemption.

Thus an exemption should be expressed in such clear language as to leave no doubt. *Bethel Convalescent Home v. Richfield* (1961), 15 Wis. (2d) 1, 4, 111 N. W. (2d) 913; *Moore Motor Freight Lines v. Department of Taxation* (1961), 14 Wis. (2d) 377, 386, 111 N. W. (2d) 148; *Albion v. Trask* (1950), 256 Wis. 485, 487, 488, 41 N. W. (2d) 627; *Evangelical Lutheran Church v. Shawano County* (1949), 256 Wis. 196, 200, 40 N. W. (2d) 590.

The city argues the tax-exempt status of these residences is doubtful because they are not expressly exempted by sub. (4m), sec. 70.11, Stats., and that when the legislature intended residences to be exempted it expressly so provided, as with residences of college faculty members under sec. 70.11 (3) (b) and residences of pastors under sec. 70.11 (4). If sec. 70.11 were a comprehensive scheme of exemptions enacted substantially at the same time so we could say the legislature in fact had the whole scheme in mind at its enactment, there would be some merit in the city's argument. However, while the exemptions are extensive and grouped together and require the application of the *pari materia* rule, we think the rule *expressio unius est exclusio alterius* is not necessarily to be used in construing this statute. Although based upon logic and the working of the human mind, it is not a "Procrustean standard to which all statutory language must be made to conform." *State ex rel. West Allis v. Milwaukee Light, Heat & Tractor Co.* (1917), 166 Wis. 178, 182, 164 N. W. 837, 839, quoting Black on the Interpretation of Laws (2d ed.), 219. Factually, there should be some evidence the legislature intended its application lest it prevail as a rule of construction despite the reason for and the spirit of the enactment. Sec. 70.11 (4m) was created in 1957 solely to apply to hospitals and its language is much broader than that used in the older exemption statutes applicable to charitable and benevolent institutions.

It is argued by the city that the "purposes of a hospital" are to be determined by the concept of the primary

function of diagnosis, treatment and care of the sick and the decision of the hospital management of what is necessary for its purposes is not conclusive in determining what property is to be exempt. We think the hospital management may determine the purposes of the hospital. What means are necessary to attain the purposes is a question open to determination. Here, the trial court resolved the question in favor of the hospital. It is true 139 of the 153 hospitals in Wisconsin do not have an internship program. But, if a secondary purpose of a hospital is generally recognized as a desirable purpose of a modern hospital, it is legitimate for the purposes of tax exemption. The section does not require uniformity of purpose except for the primary purpose of the hospital. A reasonable but strict construction of this exemption statute does not require restriction to the primary purpose.

While the construction of statutory language of other jurisdictions is not always helpful, we think when the statutory language is substantially the same and the subject matter is of universal public interest the views of other courts may be persuasive. The majority of the cases which have construed tax exemptions for property "used exclusively for the purposes of a hospital" has held that if the general use is for a hospital purpose and the particular use is reasonably necessary, then such facility is held to be exclusively used for hospital purpose although there may be an incidental benefit to others. Perhaps the leading example of this construction is *Cedars of Lebanon Hospital v. Los Angeles County, supra,* which held property used for housing nurses, interns, resident doctors and key hospital personnel was tax exempt. This was on the ground that it was reasonably necessary for the efficient functioning of the hospital to have such personnel nearby. This case, which popularized the strict but reasonable rule of construction, ruled out the "absolutely indispensable purpose" test and adopted the test

of "reasonable necessity to the efficient functioning of the hospital as an organization" to determine the exclusiveness of the use of the property. Under this doctrine, even though there is some incidental benefit to the occupants of residential properties, such benefit does not require that the property be nonexempt when the providing of such housing is for the greater benefit of the hospital. The city in its brief asks how far can a hospital go in providing for the personal needs of its interns and married residents. The answer would seem to be, as far as is reasonably necessary under existing conditions, to insure the hospital has interns and residents. *Cedars of Lebanon* was followed in *Princeton Township v. Tenacre Foundation* (1961), 69 N. J. Super. 559, 174 Atl. (2d) 601, noted in 16 Rutger's Law Review (1962), 614. That case involved the tax-exempt status of the residence of the director of the sanitorium under a statute exempting buildings "actually and exclusively used" in the work of such institution.

The doctrine of "reasonably necessary" as an interpretation of "exclusive use" statutes has been applied not only to hospitals but to colleges, religious institutions and charitable institutions. In *Multnomah School of the Bible v. Multnomah County* (1959), 218 Or. 19, 343 Pac. (2d) 893, a building used as a residence of a superintendent and dining-room supervisor and containing meeting rooms was exempt. In *Midwest Bible and Missionary Institute v. Sestric* (1953), 364 Mo. 167, 260 S. W. (2d) 25, three properties not contiguous to school one-half block away were exempt. The buildings housed the heating system, the laundry, contained living quarters for the superintendent of women and for students and faculty. The residential use was considered secondary. In *Carter v. Patterson* (Texas Civil Appeal 1897), 39 S. W. 1110, the residence of the owner of a boarding school in which some students also lived was exempt. In *Parker v. Quinn* (1901), 23 Utah 332, 64 Pac. 961, a meeting room used by a charitable society was

held to be exempt. See also *Ramsey County v. Macalester College* (1892), 51 Minn. 437, 53 N. W. 704; *Arnold College v. Milford* (1957), 144 Conn. 206, 128 Atl. (2d) 537; *People ex rel. Clarkson Memorial College v. Haggett* (1948), 191 Misc. 621, 77 N. Y. Supp. (2d) 182. In *Yale University v. New Haven* (1899), 71 Conn. 316, 42 Atl. 87, 43 L.R.A. 490, dormitories, a student dining hall, observatory and two houses for observatory officers were held exempt as exclusively occupied as a college.

There are, of course, decisions to the contrary but they represent the minority view. In *Gifford Memorial Hospital v. Randolph* (1955), 119 Vt. 66, 118 Atl. (2d) 480, offices near a hospital used by doctors for private practice were not exempt. In *Knox College v. Board of Review* (1923), 308 Ill. 160, 139 N. E. 56, the residence of the president of the college 11 blocks from the college campus was not exempt. In the more recent case of *People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. (2d) 113, 145 N. E. (2d) 80, a building on a tract which afforded the only means of ingress and egress to the principal school building was not exempt although the land was. The building was used for apartments for the head mistress of the school and the second floor as a residence by the custodian of the school. See *North Dakota Society for Crippled Children and Adults v. Murphy* (N. D. 1959), 94 N. W. (2d) 343. In *Johnson City Tax Collector v. Mississippi Baptist Hospital* (1925), 140 Miss. 485, 106 So. 1, nurses' homes were held not to be exempt.

Most of the cases applying this "reasonably necessary for" test to statutes requiring exclusive use for hospital purposes have involved situations in which the occupant of the hospital-owned residence was in such a position that it was necessary that he be close to the hospital for emergencies and readily available or "on call." See *e.g., Maxwell v. Good Samaritan Hospital Asso.* (Fla. App. 1964), 161 So. (2d) 31, certiorari denied, 166 So. (2d)

151; *Oakwood Hospital Corp. v. Michigan State Tax Comm.* (1965), 374 Mich. 524, 132 N. W. (2d) 634; *Shadyside Hospital Appeal* (1966), 207 Pa. Super. 261, 218 Atl. (2d) 355. Under this theory of the doctrine, the resident doctors, director of nursing, electronic technician and director of building services would qualify for exemption, as these personnel were determined by the hospital management to be so necessary to the efficient operation of the hospital that it made available living quarters at low rentals across from the hospital.

The exemption for the living quarters of the interns and resident doctors does not stand on their proximity to the hospital. It is not necessary that these employees live in the immediate vicinity of the hospital as they are not on twenty-four-hour call; however, the importance of their housing is no less essential to the hospital. It is the reasonable necessity of the use of the facility, not its proximity to the hospital which is essential. See *State v. Fairview Hospital Asso.* (1962), 262 Minn. 184, 114 N. W. (2d) 568.

Since St. Luke's is a teaching hospital, it is in competition with other hospitals in the United States for interns and resident doctors. It is common for hospitals with internship programs to supply housing for interns, about 50 percent of whom are married; and all Milwaukee hospitals, excepting one, having internship programs provide such housing for married interns. Providing convenient and inexpensive housing is an important part of the recruitment of interns and residents, who have difficulty finding suitable living quarters because generally theirs is a short-time need and they are not "on the spot" to view the living facilities. Most interns view the living facilities as part of the job opportunity. Many of St. Luke's interns and residents come from foreign countries and they are loathe to come to St. Luke's without being

assured of adequate and reasonable living accommodations.

Courts have been aware of this need to supply housing if one hopes to attract interns and residents or nurses. The court in *Oakwood Hospital Corp. v. State Tax Comm., supra,* considered not only the need to have interns and residents nearby but also the fact they are ". . . hard to acquire and unwilling to come unless furnished housing by the hospital." See also *Maxwell v. Good Samaritan Hospital Asso., supra,* 161 So. (2d) at 32, where it was said: "Appellee has found it necessary to have a certain amount of housing available in order to obtain nurses and other personnel needed for efficient operation of the hospital . . ."; and *Shadyside Hospital Appeal, supra,* 207 Pa. Super. at 266, 218 Atl. (2d) at 357, where ". . . due to the severe shortage of qualified nurses, the Hospital felt that by providing adequate housing, at a nominal rental to partially contribute toward payment of the maintenance thereof, some nurses might be induced to work for the Hospital who otherwise would work elsewhere."

In spite of the housing inducement, St. Luke's has been unable to completely fill its internship and residency vacancies and must continue to compete on a national basis. We think conducting an internship and residency program is a valuable and reasonably necessary function of a large modern hospital and to attain such purposes it is reasonably necessary for St. Luke's to offer housing accommodations to secure interns and residents. Such housing so used under the facts of this case is exclusively used for hospital purposes and is entitled to exemption from real-estate taxes.

The city relies on *Doctors Hospital v. Board of Tax Appeals* (1962), 173 Ohio St. 283, 181 N. E. (2d) 702, which holds contrary to this reasoning and held resident quarters furnished by a hospital to its married interns and residents were not exempt. This case relied on

*Western Reserve Academy v. Board of Tax Appeals* (1950), 153 Ohio St. 133, 91 N. E. (2d) 497, 499, where it was said: "Residence in a dwelling with a family must necessarily be a private use of the premises. Where the exercise of such private rights constitutes the primary use of property owned by a charitable institution such property is no longer used exclusively for a charitable purpose." We are not impressed with this reasoning even though it was used in reference to an exemption claimed for a hospital as a charitable institution rather than as a nonprofit hospital. The great weight of authority and the better reasoning is to the contrary. It is noted in *Aultman Hospital Asso. v. Evatt* (1942), 140 Ohio St. 114, 42 N. E. (2d) 646, that a nurses' residence was exclusively used for charitable purposes because reasonably necessary to the hospital.

The city contends the trial court's declaration that the upper unit of one of the duplexes is tax exempt while the lower unit is assessable was contrary to this court's holding in *Gottlieb v. Milwaukee* (1967), 33 Wis. (2d) 408, 147 N. W. (2d) 633. In *Gottlieb* we held that part of the Urban Redevelopment Law, sec. 66.409 (1), Stats., which permitted a building in the same class to be taxed at different rates, was unconstitutional as violative of sec. 1, art. VIII, Wisconsin constitution, which requires the rule of taxation be uniform. We think *Gottlieb* does not touch the question involved in the instant case.

The upper and lower living units in the duplex are distinct and separate units and can constitute different classifications on the basis of use. A classification based on use is made by sec. 70.11 (4m), Stats., and all property falling within such use is treated alike. Thus the actual use determines the area of the classification and there is therefore a uniformity of taxation. There is no constitutional requirement that a building is indivisible for tax purposes.

*By the Court.*—Judgment affirmed.