ALONZO CUDWORTH POST NO. 23, AMERICAN LEGION, Appellant, v. CITY OF MILWAUKEE and another, Respondents.

*No. 12. Argued February 4, 1969.—Decided March 7, 1969.*
(Also reported in 165 N. W. 2d 397.)

For the appellant there were briefs by *Michael, Best & Friedrich,* and oral argument by *Frank J. Pelisek,* all of Milwaukee.

For the respondents there was a brief by *John J. Fleming,* city attorney, and *Walter J. Schutz,* assistant city attorney, and oral argument by *Mr. Schutz.*

ROBERT W. HANSEN, J. The law of this state as to tax exemptions for religious, educational, charitable, benevolent associations and veterans' organizations is clear.[1] Memorial halls occupied by organizations of United States war veterans are specifically exempted from property taxation with provision for "taxing in part" any portion of such memorial hall not used for exempt purposes and used for pecuniary profit.[2] It is, however, not always clear how these statutes apply to a particular fact situation. To help in such application of the law to the facts of this case, we begin with a brief legislative history.

---

[1] "The statute of exemptions for taxation, upon which respondent relies, is not difficult of construction. Its intent is plain. It would encourage benevolence, charity, religion, education, and fraternity. . . . Respondent is a corporation engaged in promoting charity, benevolence, education, and fraternity—not one but nearly all of the objects of the statute." *Catholic Woman's Club v. Green Bay* (1923), 180 Wis. 102, 104, 192 N. W. 479.

[2] Sec. 70.11, Stats. "(8) TAXED IN PART. Where property for which exemption is sought pursuant to this section is used in part for exempt purposes and in part for pecuniary profit, then the same shall be assessed for taxation at such percentage of the full market value of said real and personal property as shall fairly measure and represent the extent of such use for pecuniary profit. In determining the amount of such assessment, the term 'pecuniary profit' as used in this section is hereby defined as the use of any portion of said premises or facilities for purposes not directly included within the objects of such organization for which use compensation is received, and the space so used, the period of such use, and all other factors tending to measure the extent thereof, shall

*Legislative history.*

Since 1849 the legislature has granted tax exemption to property of religious, educational, charitable and benevolent associations if not leased or not otherwise used for pecuniary profit.[3] In 1909, there was added a specific exemption for all memorial halls of war veterans' organizations.[4] In an early case, this court held the property of the Turners Society to be a "single indivisible piece of property" to be taxed in toto if any part of it was

be considered in fixing the amount of such assessment. The term 'pecuniary profit' as used in this section shall not be deemed to include such incidental income as that derived by such organization from occasional social affairs conducted principally by and for the members of such organization but which nonmembers may attend, nor any income derived from the resale of any merchandise given or donated to any charitable or benevolent society or association when such income is used for the purposes of such society or association. The use of 'pecuniary profits' derived from the use of all or a portion of any premises shall not create an exemption in favor of such property. The occasional renting of such halls or buildings for public purposes shall not render them taxable, provided that all income derived therefrom be used for the upkeep and maintenance thereof.

"(9) MEMORIALS. All memorial halls and the real estate upon which the same are located, owned and occupied by any organization of United States war veterans organized pursuant to act of congress and domesticated in this state pursuant to the laws of this state, containing permanent memorial tablets with the names of former residents of any given town, village, city or county who lost their lives in the military or naval service of the state or the United States in any war inscribed thereon, and all personal property owned by such organizations, and all buildings erected, purchased or maintained by any county, city, town or village as memorials under s. 45.05 or 45.055. The renting of such halls or buildings for public purposes shall not render them taxable, provided that all income derived therefrom be used for the upkeep and maintenance thereof. Where such hall or building is used in part for exempt purposes and in part for pecuniary profit, it shall be assessed for taxation to the extent of such use for pecuniary profit as provided in sub. (8)."

[3] The exemption first appears in R. S. 1849, ch. 15, sec. 4. The leasing provision was added in ch. 130, sec. 2, Laws of 1868.

[4] Ch. 89, sec. 1, Laws of 1909.

used for nonexempt purposes and for profit. The court rejected the "taxed in part" approach unless or until ". . . some procedure for severance [is] authorized by the legislature.[5] Such legislative authorization, in fact, a legislative mandate to tax only those portions of otherwise exempt property that were in fact being used for nonexempt purposes came in 1931.[6] Additionally, the legislature has provided that renting memorial halls for public purposes shall not render them taxable "provided that all income derived therefrom be used for the upkeep and maintenance thereof."[7] The case before us hinges upon the application of the "taxed in part" statute to the bar and dining room of Alonzo Cudworth Post.

*What is the test?*

The first interpretation of the "taxed in part" statute as applied to club, lodge or post property involved a fraternal organization, the Knights of Pythias.[8] However, the test there spelled out applies as well to tax-exempt memorial halls of war veterans' organizations. Here is that test:

"Under the statute two things operate to defeat the exemption: (1) The use of any part of the building by nonmembers for which compensation is received; (2) its use by members for purposes outside of the object of such organization."[9]

---

[5] *Gymnastic Association v. Milwaukee* (1906), 129 Wis. 429, 438, 109 N. W. 109.

[6] Ch. 302, sec. 2, Laws of 1931.

[7] Sec. 70.11 (9), Stats. This provision was a part of the original law exempting memorial halls. Ch. 89, sec. 1, Laws of 1909.

[8] *Trustees of Clinton Lodge v. Rock County* (1937), 224 Wis. 168, 272 N. W. 5.

[9] *Id.* at page 172. Counsel for the Post emphasize use of profits, if any, to carrying on the benevolent purposes of the institution in operating "for pecuniary profit." In *Milwaukee Protestant Home v. Milwaukee* (1969), 41 Wis. 2d 284, 164 N. W. 2d 289, this court commented, "Charging pew rent does not make a church not a church." There the issue of providing services for compensation to the general public or nonmembers was not involved. Res-

*Use by members only.*

Where the clubhouse of a veterans' post is used only by its members, or nearly exclusively so, the exempt status is defeated only if such use by its members is for purposes outside the objectives of the organization. The maintenance of clubroom facilities for members, including the serving of food and drinks, is not outside the purposes and objectives of a veterans' post which include the promoting of the spirit of comradeship among its members. As this court stated in the *Knights of Pythias Case:*

"So long as the use is confined to members, the property does not lose its status as exempt property unless it is used for some purpose 'outside of the objects of such organization.' Certainly recreation is one of the objects of all fraternal associations. The use therefor of the lower floor by members of the lodge did not destroy the exemption. . . ." [10]

*Patronage by public.*

It is equally settled law in Wisconsin that public patronage of club facilities where money is exchanged for services on a regular basis takes such publicly patronized facilities out of tax-exempt status. This was made clear in a case involving the club home of the Fraternal Order of Eagles Aerie in Madison. There the club operated a dining room, bar, and bowling alley. The dining room was open to the public each day for certain hours; the bowling alley was open to the public on weekends and to outside leagues at other times; the bar was open to nonmembers at the times when they used other facilities. This court upheld a board of review finding that ". . .

idents of a retirement home are the equivalent of members of a Post. If the Protestant Home for the Aged had operated a bar and restaurant, inviting the general public to patronize it or permitting more than incidental use of such facilities by nonmembers, the issue here involved would have arisen there.

[10] *Trustees of Clinton Lodge v. Rock County, supra,* footnote 8 at page 173.

during public hours the dining room is a public dining room . . . At the times when the various leagues mentioned above are bowling . . . the bowlers are present not because they are Eagles but because they are league members . . . And so it goes, with the bar and those other parts of the clubhouse which are used at times exclusively for members and at other times nonexclusively for compensation and pecuniary profit." [11] Public patronage of a separable facility within a tax-exempt building renders the publicly patronized portion of the building taxable. As this court then said:

". . . there was both availability of club property for public use plus use by the public; an offer to and an acceptance by the public . . . the Eagles' offer to the public followed by the public's acceptance, manifested by its use of the facilities, for the time being created the facility a public one and destroyed the entire exemption during the period of such use." [12]

*Rental of premises.*

The question of rental of Post premises to outside groups for public purposes is not before us. It is unchallenged that the policy of Alonzo Cudworth Post is that no part of its building is made available for general public functions although a charitable or civic organization may on occasion be allowed to use a hall or room without charge. In any event, it is clear that the exemption statute provides with respect to memorial halls of veterans' organizations, that "the renting of such halls or buildings for public purposes shall not render them taxable, provided that all income derived therefrom be used for the upkeep and maintenance thereof." [13]

*Guest privileges.*

There is no trouble at the two ends of the spectrum. Clubroom facilities maintained for members only do not

[11] *Madison Aerie, No. 623, Fraternal Order of Eagles v. Madison* (1957), 275 Wis. 472, 476, 477, 82 N. W. 2d 207.

[12] *Id.* at page 477.

[13] Sec. 70.11 (9), Stats., cited in full at footnote 2.

affect the otherwise tax-exempt status of an association's property. Club facilities to which the public is invited become public facilities during the times they are so used. The situation here is somewhere in between the two extremes.

We deal here with an established Post policy that members may invite up to nine guests to use the facilities. There is no restriction as to the number of visits such nonmember guests may make to the Post. The very term, guest privileges, can have broad or narrow implications. In a state where the family is by statute recognized as the basic unit of society,[14] there is no reason to consider members of a member's immediate family as outsiders or nonmember guests. Similarly, the interclub exchange privileges that bring fellow members from other local units of the same organization to visit creates no aspect of public or semipublic operation. Similarly, the inviting of prospective members to view Post facilities falls short of seeking or permitting public patronage. It should be clear that we are not speaking of a sharply limited guest privilege. Of such incidental variation from the basic nature of the exempt operation, this court, in another context, held:

"... the departure in this case is so slight as to be negligible and therefore to be disregarded ... [It] does not amount to a sufficient departure to warrant us in saying that the property is not used exclusively for educational and benevolent purposes, particularly where such work is done as incidental to its main purpose."[15]

The same point is made in a subsequent case involving the Cardinal Publishing Company:

[14] Sec. 245.001 (2), Stats., stating: "... Marriage is the institution that is the foundation of the family and society. Its stability is basic to morality and civilization, and of vital interest to society and the state."

[15] *Northwestern Publishing House v. Milwaukee* (1922), 177 Wis. 401, 409, 188 N. W. 636.

"If the portion of the premises so separated and devoted to useful profit is so inconsequential in extent in comparison with the whole property, it may lead to the conclusion that the devotion of the whole property to the exempt uses is in a substantial sense an exclusive use for such purposes. . . If there is no segregation of property and devotion of a portion of it to purposes outside of the corporate objects, but if the whole property in a physical sense is primarily devoted to the purposes of the organization, then the fact that there are occasional or incidental uses of the property for gain, which is devoted to the purposes of the society claiming the exemption, will not destroy the exemption." [16]

This reasoning applies to "use by nonmembers for which compensation is received" as well as use of the property in part or as a whole, for "purposes outside the objectives of the organization." If the deviation is comparatively inconsequential it will not destroy the exempt status in whole or part. If there were to be a minor but hardly inconsequential deviation, for example, ten percent of Post patrons being guests or nonmembers, it might be well to remember that this court has held the proportion of public use based on a measurement of the extent of nonexempt use is a permissible approach to tax assessment under sec. 70.11 (8), Stats. Where the percent of actual nonmember use of a facility is a minor proportion of the total patronage, it might well become the only reasonable approach.

In the case before us the Post's policy as to guests being admitted has few limits. The only limitation seems to be that a Post member may not bring more than nine persons at one time, and an auxiliary member may not bring more than three guests at any one time. There is no limit on how often a Post member may bring the same individual as his guest. We are not critical of such nearly unrestricted guest privilege. However, it is clearly pos-

[16] *Cardinal Publishing Co. v. Madison* (1931), 205 Wis. 344, 347, 348, 237 N. W. 265.

sible that at any given time there might be more guests than members in the bar or dining room of the Post. Theoretically, there might be nine guests for each member. It is unfortunate that we do not have a record of the use by members and nonmembers to determine the actual proportion of use by each. Where there is no evidence of what the actual situation was on a day-to-day basis, the doubt must be resolved against the claimant of tax exemption. To do so is to do no more than restate the rule in this state:

"Taxation is the rule and exemption the exception. He who claims exemption must bring himself within the terms of the exception." [17]

Following the rule of strict but reasonable construction in tax-exemption cases,[18] we find the action of the Tax Commissioner and the Board of Assessors in holding the memorial hall of the Cudworth Post to be taxable, in part, not to be arbitrary, capricious or unreasonable on this record and for this year. This leaves for review only the percent of the building that is properly taxable on such holding.

*Percent of space.*

The trial court distinguished between the hall portion and the cocktail lounge and dining room, describing the latter two as "facilities where money is exchanged for services on a regular business basis," finding such facilities to fall in the ambit of the definition of pecuniary profit. Because of the substantially unrestricted guest

[17] *Methodist Episcopal Church Baraca Club v. Madison* (1918), 167 Wis. 207, 167 N. W. 258.

[18] *See Columbia Hospital Asso. v. Milwaukee* (1967), 35 Wis. 2d 660, 668, 669, 151 N. W. 2d 750, stating in pertinent part: ". . . a strict construction is nonetheless a construction, and an exemption statute need not be given an unreasonable construction or the narrowest possible construction. A 'strict but reasonable' construction seems to be the pithy and popular statement of the rule."

privileges, barely limited as to number of guests and not at all limited as to number of visits by any one guest, we agree, but we are of the opinion that the nonexempt use must be considered as strictly limited to those portions of the building directly involved in such use for profit.

When the Tax Commissioner withdrew the tax exemption from the entire first floor because the bar and dining room are there located, he painted with too wide a brush. The entire first floor represents about 40 percent of the floor space of the total building and includes the following rooms, the use of which was covered in testimony and by stipulation:

| Room | Dimensions | Area |
|---|---|---|
| Dining room | 40′ x 70′ | 2,800 sq. ft. |
| Bar area | 30′ x 50′ | 1,500 sq. ft. |
| Rooms 28 and 29 | 20′ x 40′ | 800 sq. ft. |
| Kitchen | 50′ x 50′ | 2,500 sq. ft. |
| Walk-in closet | 9′ x 12′ | 108 sq. ft. |
| Service bar | 9′ x 12′ | 108 sq. ft. |
| Men's room | 9′ x 12′ | 108 sq. ft. |
| Ladies' room | 12′ x 15′ | 180 sq. ft. |
| Telephone booth and dressing rooms | 9′ x 12′ each | 216 sq. ft. |
| Boiler room | 50′ x 50′ | 2,500 sq. ft. |
| Storage room | 8′ x 10′ | 80 sq. ft. |
| Storage room | 6′ x 10′ | 60 sq. ft. |
| Receiving room | 15′ x 30′ | 450 sq. ft. |

The supervisor-review examiner for the Tax Commissioner's office testified that some of the rooms listed were related primarily to club activities which are exempt and that the boiler room also heated the second and third floors of the building. The two meeting rooms were used for committee meetings and for storage. The examiner did not examine the storage rooms as to contents nor could he state that the men's and ladies' rooms and dressing rooms were used solely to service the bar, restaurant and kitchen. The trial court considered the issue of severability of first floor facilities but concluded that

". . . the function of the court is not to make an independent assessment." There is the merit of prudence in this conclusion but, where the wrong measuring stick was used by the Tax Commissioner in determining what percentage of the building is taxable, the alternatives are to remand for a new assessment in the light of guidelines laid down or a revision of the percentage claimed. Because we deal only with the tax to be paid for a given year, we elect not to return the case for a new assessment in the light of guidelines here set forth. To assure finality of decision at least in respect to the year 1964, we establish as nonexempt areas of the memorial hall for such year the dining room, bar area, kitchen, walk-in closet, and the two storage rooms. There is no testimony as to what is stored in the storage rooms, but doubts in this regard are to be resolved against the claimant of tax exemption.

The boiler room, rest rooms and telephone booth are found to be exempt. They serve the operation of the bar and dining room no more than do the walls, roof or sidewalk in front of the memorial hall. It is that portion of the memorial hall in which the public or nonmembers receive services for compensation that removes itself from tax-exempt status, and only such portion.

Appellant's brief computes the total area directly involved in the bar and dining room operation at 22.7 percent of the 30,840 square feet in the building. Our arithmetic puts the nonexempt percent at 22.9 percent and we set that as the taxable or nonexempt portion of the memorial hall for the year 1964. No claim is made that the fact that memorial hall is closed on Mondays requires a holding that an additional one-seventh reduction should be made to apply the percentage of time used as well as percentage of area used. We do not rule on that possibility.

As to the parcel of land, immediately north of the memorial hall, known as 1800 North Prospect Avenue,

currently used for parking and available for future expansion, we find it to be exempt as reasonably appurtenant to the memorial hall. It is not an area where nonmembers or the public receive services for compensation. Either as a parking space or as an area for future expansion of the memorial hall it is not outside the purposes of the memorial hall and not operated for profit. It is to be treated the same as the lot at 1756 North Prospect Avenue on which the memorial hall stands. It would be impossible to have the memorial hall without 1756, and impractical to have a memorial hall in a motorized age without 1800. For real estate tax purposes, the 22.9 percent figure applies to the memorial hall building. For personal property tax purposes, it applies to the contents thereof.

*By the Court.*—Judgment modified and, as modified, affirmed.