WISCONSIN ELECTRIC POWER COMPANY, Respondent, v.
DEPARTMENT OF REVENUE, Appellant.

*No. 182. Argued April 30, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 841.)

108

For the appellant there were briefs by *Robert W. Warren*, attorney general, and *E. Weston Wood* and *Allan P. Hubbard*, assistants attorneys general, and oral argument by *Sverre O. Tinglum*, assistant attorney general.

For the respondent there was a brief by *A. William Finke*, *James D. Zakrajsheck* and *Carol A. Curran*, attorneys, and *Robert H. Gorske* and *Quarles, Herriott*,

*Clemons, Teschner & Noelke* of counsel, all of Milwaukee, and oral argument by *Mr. Finke* and *Mr. Gorske.*

HEFFERNAN, J. The recitation of the facts points out that, prior to the passage of ch. 206, Laws of 1969, property owners subject to the general property tax were exempt from assessment and taxation on certain air and water pollution-abatement property associated with the production of income. That exemption statute, sec. 70.11 (21) (a), Stats., applied only to property subject to the general property tax, and not to public utilities, which are taxed on the basis of a special utilities tax imposed by ch. 76. Ch. 76, prior to 1969, therefore, did not afford the same exemptions to public utilities that were applicable to the owners of similar property under the general property tax laws. On November 16, 1969, sec. 76.02 (10) was amended to incorporate by reference the exemption appearing in sec. 70.11 (21) (a).

The narrow question presented by this appeal is whether pollution-abatement equipment purchased and constructed by the Wisconsin Electric Power Company prior to 1969 under circumstances which would have afforded it an exemption from general property taxes, were they applicable, was exempt from public utility taxation for assessment periods subsequent to the passage of ch. 206, Laws of 1969. We conclude, following the plain and literal meaning of the two statutes, that the property in question qualified for that exemption and the exemption could be asserted upon the passage of ch. 206, Laws of 1969.

Tax exemptions are matters of legislative grace, and this court will not construe a statute to find an exemption where there is not clear evidence that such legislative grace was intended. It is the duty of one who would assert an exemption to bring himself within the terms of an exemption provision. *Engineers & Scientists v.*

*Milwaukee* (1968), 38 Wis. 2d 550, 553, 157 N. W. 2d 572; *Estate of Thomas* (1957), 1 Wis. 2d 402, 405, 84 N. W. 2d 68. Taxation is the rule, and exemption from taxation is the exception which must be demonstrated by a clear expression of legislative intent. *Alonzo Cudworth Post No. 23 v. Milwaukee* (1969), 42 Wis. 2d 1, 13, 165 N. W. 2d 397; *Evangelical Lutheran Church v. Shawano County* (1949), 256 Wis. 196, 200, 40 N. W. 2d 590. In *Bethel Convalescent Home v. Richfield* (1961), 15 Wis. 2d 1, 4, 111 N. W. 2d 913, the court quoted with approval the following rule appearing in *Madison Aerie No. 623 F. O. E. v. Madison* (1957), 275 Wis. 472, 476, 82 N. W. 2d 207:

" 'Statutes exempting property from taxation are to be strictly construed and all doubts are resolved in favor of its taxability. To be entitled to tax exemption the taxpayer must bring himself within the exact terms of the exemption statute.' "

This court, nevertheless, has said in *Columbia Hospital Asso. v. Milwaukee* (1967), 35 Wis. 2d 660, 668, 669, 151 N. W. 2d 750:

"However, a strict construction is nonetheless a construction, and an exemption statute need not be given an unreasonable construction or the narrowest possible construction. A 'strict but reasonable' construction seems to be the pithy and popular statement of the rule. . . . The difference between a liberal and a strict construction is best illustrated in those cases where the meaning of the language expressing the objective intent of the legislature is doubtful; in such cases, any doubt under the strict construction rule must be resolved against the exemption. Thus an exemption should be expressed in such clear language as to leave no doubt." *Accord: Engineers & Scientists, supra,* at page 553; *Milwaukee Protestant Home v. Milwaukee* (1969), 41 Wis. 2d 284, 301, 164 N. W. 2d 289.

Applying these principles, we are satisfied that a strict construction of the statue brings the pollution-abatement

facilities of the Wisconsin Electric Power Company within the exemption. Sec. 76.02 (10), Stats., excepts from taxation under sec. 76.13, "treatment plant and pollution abatement equipment exempt under s. 70.11 (21) (a)." Sec. 70.11 (21) (a) provides that:

"All property purchased or constructed with the approval of the committee on water pollution, department of health and social services, a city council, a village board or county board pursuant to s. 59.07 (53) or (85), for the purpose of abating or eliminating pollution of surface waters or the air, and all property purchased or constructed with the approval of the department of resource development or the department of natural resources . . . may be exempt under this provision."

The exemption from tax purposes afforded by sec. 76.02 (10), Stats., hinges upon satisfying the conditions imposed by sec. 70.11 (21) (a). That section only requires that the property be purchased or constructed with the approval of one of the governmental agencies named therein. The stipulated facts reveal that the construction or purchase of the property in question was with the contemporaneous or prior approval of one of the agencies recognized by the statute. In respect to the Milwaukee county facility, approval was obtained from the Milwaukee County Department of Air Pollution Control. In the case of its Port Washington facility, approval was obtained from the city of Port Washington. These approvals were sufficient to trigger the eligibility of these properties to be exempt from future taxation upon the passage of ch. 206, Laws of 1969.

A literal reading of the statute places these properties squarely within the exemption afforded by law.

The Wisconsin Department of Revenue would, however, disagree with the literal meaning of the statute. It contends that the approval contemplated could only be an approval of a tax exempt status, and since the utility could not have the tax exempt status in respect

to this property prior to 1969, the approval given before that time by the authorities recited in sec. 70.11 (21) (a), Stats., was "meaningless." We do not agree.

The approvals authorized in sec. 70.11 (21) (a), Stats., on their face, are not per se concerned with tax exemption. They are clearly approvals that are directed to effectuate "the purpose of abating or eliminating pollution of surface waters or the air." These approvals are designed to effectuate the public policy of assuring clean air and clean water. If that purpose is accomplished, the approved facility is awarded a tax exemption. The desired public purpose, however, of having proper anti-pollution facilities is accomplished upon the construction or purchase of the approved plant. The carrot of tax exemption is a subsequent reward bestowed as a matter of legislative grace upon those who have built or purchased approved facilities.

It should be borne in mind that the legislature is presumed to have known the contents of sec. 70.11 (21) (a), Stats., when it incorporated it into the exemption for utility tax purposes. A plain reading of that incorporated statute reveals that one of the approving agencies was the Department of Resource Development, an agency which was absorbed into the Department of Natural Resources and had long ceased to have an independent existence at the time of the passage of ch. 206, Laws of 1969. Thus, in 1969, for utility tax exemption purposes, the legislature specifically provided that the approval of a then defunct agency was sufficient. The legislature, therefore, contemplated that the construction or purchase approval could be given at a time long antedating the extension of the actual tax exemption to a public utility. The approvals obtained in the instant case by the plaintiff were not "meaningless," but were highly relevant to the underlying public policy of the state, that of controlling the pollution of our air and waters. Reading these two statutes together, this is

the public purpose to be effected and which makes these exemptions constitutional. To say, as the Department of Revenue apparently does, that the purpose of the exemption is purely to assure exoneration from taxation would create a serious constitutional problem.

We reach our conclusion on the literal provisions of the statute. Accordingly, we cannot accept the plaintiff's additional contention that a facility constructed prior to ch. 206, Laws of 1969, but not contemporaneously approved by the designated agencies, would be eligible for exemption from taxation were it merely approved as a proper pollution abatement facility after the enactment of ch. 206. While it might well be in the public interest for the legislature to extend the exemption to such facilities, provided they can now meet the pollution-abatement standards, the legislature has failed to grant that exemption. Whether that exemption should be granted in addition to those that come literally within the terms of the statute is a matter of future legislative determination and not for judicial construction.

We have reached our conclusion entirely on the basis of the plain meaning of the statutes involved. We should point out, however, that the meaning apparent in these statutes is supported by two reports of the Joint Survey Committee on Tax Exemptions on Senate Bill 233, which, as amended, became ch. 206, Laws of 1969. The original version of Bill 233 proposed various minor changes in the language of sec. 70.11 (21), Stats., but did not provide for extending the exemption to utilities. The Joint Survey Committee's first report on the bill stated that the purpose of the changes in sec. 70.11 (21) was to clarify the existing law and "permit the exemption of pollution plant property constructed or purchased *prior* to the [1965 amendment]." (Emphasis supplied.)

A subsequent amendment to Bill 233 provided for amending sec. 76.02 (10), Stats., to extend the exemption to utilities. The senate amendment was separately re-

ferred to the Joint Survey Committee for a second report. That report concluded that the changes in sec. 76.02 (10) would "reconcile the tax statutes pertaining to public utilities and common carriers with the general property tax treatment of pollution plant property, as clarified by the original bill." The report contemplated an immediate, substantial tax loss as a result of utility property becoming exempt which had theretofore been taxed. Read together, these reports are persuasive evidence that the changes in the exemption statutes were intended to apply to property already in existence. Nevertheless, we do not rely on these reports in reaching our determination, for the second report does not appear in the official legislative history contained in the bill jacket filed with the secretary of state, but is rather to be found in the files of the legislative council.

Included as a supplement to the record in this case is a series of stipulations concerning the related cases of *Madison Gas and Electric Company* (Case No. 181), *Wisconsin Power and Light Company* (Case No. 183), and *Wisconsin Public Service Corporation* (Case No. 184). In each of these cases, the Wisconsin Department of Revenue has appealed from the trial court's determination that certain properties of these utilities were exempt from taxation. These utilities and the Department of Revenue have stipulated in each case that they agree to be bound by this court's decision of the issues in the instant case. Those stipulations, however, are predicated on the assumption that the only issue raised in the instant case is:

". . . whether the tax exemption provided by sec. 70.11 (21), Wis. Stats., can be applied to property of a light, heat and power company, as defined in sec. 76.02 (8), Wis. Stats., when such property was purchased or constructed before ch. 206, Laws of 1969, became effective."

That stipulated issue is broader, however, than the issue upon which we base this decision. While we hold

herein that the exemption can be applied to utility property that was purchased or constructed before the effective date of ch. 206, Laws of 1969, we do no more than to determine in this case that the exemption is applicable on such prior construction or purchase if the purchase or construction was with the approval of one of the agencies named in sec. 70.11 (21) (a), Stats.

*By the Court.*—Judgment affirmed.