Shadyside Hospital Appeal.

Argued November 12, 1965. Before WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (ERVIN, P. J., and FLOOD, J., absent).

262

*Maurice Louik,* County Solicitor, with him *Thomas M. Rutter, Jr.,* Assistant County Solicitor, and *Francis A. Barry,* First Assistant County Solicitor, for appellant.

*Joseph C. Swaim, Jr.,* with him *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellee.

OPINION BY MONTGOMERY, J., March 24, 1966:

Shadyside Hospital, a large nonprofit corporation, is exempt from local taxes on its main building and grounds as a charitable institution. In 1958 it purchased from a member of its medical staff the residence of that member which is contiguous to the hospital's main property. Said residence is a two and one-half story structure of approximately fourteen rooms and three baths, and rests on a lot of ground fronting sixty feet on South Aiken Avenue with a depth of 160 feet, the rear line of which is common with the line of the grounds of the hospital proper. There is a walkway connecting the two areas. Since October 1, 1958, this residence has been used by personnel of the hospital, i.e., four registered nurses, one licensed practical nurse and one senior operating room technician, for residential purposes, each paying a rental varying from $20 to $30 per month. Some space is also reserved by the hospital for storage and emergency purposes, as for setting up cots for other hospital personnel to enable them to sleep near the hospital during periods when

travel is made difficult by storms, etc., or their presence is otherwise required on short notice. The rentals are much below those charged by neighboring apartment houses and are insufficient to defray the expenses incurred by the hospital in operating this unit. Annual deficits of between $1,600 and $2,050 have been paid from the general funds of the hospital since it was acquired in 1958. The hospital supplies electricity, gas, water, sewerage, housekeeping, linens, repairs and general maintenance for this unit, as well as a telephone between it and the hospital.

Although nursing personnel of the hospital are not required to live in this residence as a condition of employment, it is necessary for some of such persons to be available on short notice.

In the opinion of the administrator of the hospital and the directress of nurses that such a facility is necessary for the proper operation of the hospital and the use to which it is being put was one contemplated by the hospital board when it purchased the property.

Appellee's claim for tax exemption for the residence for 1959 and 1960 having been denied by the Board for the Assessment and Revision of Taxes (Board), it appealed to the County Court of Allegheny County which, after hearing, reversed the Board and allowed exemption. This appeal by the Board followed.

Appellee's claim of exemption is based on Article 9, Section 1, of the Pennsylvania Constitution and the Act of May 22, 1933, P. L. 853, §204, as amended, 72 P.S. §5020.204. The general status of appellee as a charitable institution being admitted, the only issue before us is whether the use to which the residence is being put is reasonably necessary for the occupancy and enjoyment of the hospital. The fact that some income is derived from the use of the property is not determinative of the issue, so long as there is no intent to profit and no actual profit is made. *Young Men's Christian Asso-*

*ciation of Pittsburgh Tax Case,* 383 Pa. 176, 117 A. 2d 743 (1955); *Salvation Army v. Allegheny County,* 367 Pa. 373, 80 A. 2d 758 (1951); *Barnes Foundation v. Keely,* 314 Pa. 112, 171 A. 267 (1934). The record clearly demonstrates that there is no profit motive present, nor is there any competition with other rental units in this neighborhood.

The right to say what is reasonably necessary for the occupancy and enjoyment of such a charity is primarily for the governing body of the charity. In *County of Lancaster v. Y.W.C.A. of Lancaster,* 92 Pa. Superior Ct. 514, 518 (1928), this Court said, "The question whether the camp buildings and grounds are 'necessary for the occupancy and enjoyment' of the charitable institution is one *primarily* for its governing board. It is not for the courts to substitute their judgment for that of the governing board on the question of what grounds are necessary. The word 'necessary' as used in the statute does not mean 'absolute necessity,' but rather a 'reasonable necessity,' 'convenient and useful' to the purpose of the charity." (Emphasis supplied) This rule has been restated many times. *Lycoming House v. Board of Revision of Taxes of the City and County of Philadelphia,* 164 Pa. Superior Ct. 538, 67 A. 2d 646 (1949); *The United Presbyterian Women's Association of North America v. The County of Butler,* 110 Pa. Superior Ct. 116, 123, 167 A. 389, 392 (1933). However, there is a limit to the exercise of that discretion by the governing boards. Whereas it is their decision primarily, "There is a limit to the amount of land that may be said to be adapted to the accomplishment of the purposes of a charity and be exempt from taxation, and in such cases a pure question of fact may arise which must be determined by the fact-finding body . . ." The limit was not reached in that case.

We agree with appellant that ultimately the courts may reject the determination of "reasonable necessity"

made by the governing body of the charity where the limit of its discretion has been clearly exceeded, as was done in *Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review,* 405 Pa. 297, 175 A. 2d 82 (1961), and in *Moon Township Appeal,* 387 Pa. 144, 127 A. 2d 361 (1956).

In the *Moon Township Appeal* the Supreme Court sustained the lower court in holding taxable ". . . those areas occupied by concessionaires which could not, by any proper interpretation of 'reasonable necessity,' be held to enjoy a tax exempt status . . ." regardless of the fact that the governing body, the County Commissioners, had given the entire airport a tax exempt status.

In *Pittsburgh Bible Institute* the Supreme Court, after noting that the exemption is broader in charitable uses than in religious, and that only land forming an integral part of the charitable purpose and not in excess of reasonable needs to effectuate that purpose is exempt, held the land, 120 acres of woodland, *clearly* should not be exempt, although the governing board of the institution deemed it to be part of and necessary for the purposes of its work.

In the present case not only the governing body of the hospital determined the use of this property was a "reasonable necessity" but the lower court also made such a finding after a full hearing. The record sustains such a finding and the following analysis made by the lower court in the very able opinion written by President Judge LENCHER justifies the conclusion that the subject property is deserving of exempt status:

"The property, located immediately adjacent to the Hospital's main building, is being utilized primarily as a residence for graduate nurses. In the event of a disaster or emergency, staff nurses must report to the Hospital for duty immediately. In order to have nurses available on an emergency basis, the officers of the

266

Hospital have determined that the Property should be utilized as a residence for nurses who will then be immediately available for emergency duty. The need for a graduate nurses' residence on the Hospital's premises is especially great because of the unavailability in the Hospital's neighborhood of adequate housing for the nurses at a rental which they could afford on the salaries which the Hospital is able to pay them. In addition, due to the severe shortage of qualified nurses, the Hospital felt that by providing adequate housing, at a nominal rental to partially contribute toward payment of the maintenance thereof, some nurses might be induced to work for the Hospital who otherwise would work elsewhere. As a result of the Property being used for a nurses' residence, the Hospital has been able to induce an increased number of qualified nurses to take nursing jobs at Shadyside. Consequently, the subject property is being utilized solely for hospital purposes."

Order affirmed.

WATKINS, J., dissents.