## SOUTHERN BAPTIST HOSPITAL OF FLORIDA, Inc. v. TAX ASSESSOR, et al.

No. 67-410.

Circuit Court, Duval County.

March 19, 1968.

---

Glickstein, Crenshaw, Glickstein, Hulsey & Fay, Jacksonville, for plaintiff.

Rogers, Tower, Bailey, Jones & Gay, Stallings & Marr, W. Joe Sears, Jr. William Lee Allen, and J. Henry Blount, all of Jacksonville, for defendants.

## WILLIAM L. DURDEN, Circuit Judge.

*Final judgment:* This case is before the court upon application of the parties for the entry of a final judgment. The court has considered the factual and legal issues raised by the pleadings, the oral testimony, the documentary evidence, memorandum briefs, arguments and proposed judgments submitted by counsel.

### A. JURISDICTION, PARTIES AND VENUE

### 1. *Nature of suit*

This is a suit seeking exemption from ad valorem taxation on certain lands owned by the plaintiff. The court is asked to declare the lands exempt from ad valorem taxation commencing with the year 1966 and to refund the taxes paid for that year.

### 2. *Constitutional authorities for suit*

The circuit courts of this state have exclusive original jurisdiction in all cases involving the legality of any tax, assessment, or toll. Article V, §6, Florida Constitution.

### 3. *Statutory authority for suit*

Such actions are equitable in nature and the court is required to inquire into and determine the legality, equality and validity of the tax or assessment under the constitution and laws of the state of Florida and to render judgments setting aside such tax or assessments or any part of the same that shall appear to be contrary to law. §196.01, Florida Statutes, 1965.

### 4. *Jurisdiction over subject matter*

Jurisdiction over the subject matter by the court is not questioned in this suit.

### 5. *Jurisdiction over parties*

Lack of jurisdiction over all parties defendant was not raised as an issue in this suit.

### 6. *Venue*

Under certain circumstances, tax litigation involving the state comptroller must be brought in Leon County. The law provides that in all such suits as this, the cause of action shall be brought

in the county where the land is situated. §196.14, Florida Statutes, 1965.

### B. BASIC ISSUES CREATED BY PLEADINGS

1. Whether or not the operation of the Marshall Taylor Doctors Building by the plaintiff is such a "hospital purpose" as to entitle the plaintiff to exemption from ad valorem taxes as provided under §192.06 (13) of the Florida Statutes and article IX, §1, and article XVI, §16, of the Florida Constitution.

2. Must a taxpayer seeking a tax refund because his property is exempt from ad valorem taxation allege that the defendant tax collector has not paid over the taxpayer's money to the proper authorities.

3. Whether or not plaintiff has exhausted all administrative remedies and otherwise fulfilled conditions precedent to bring this suit.

### C. LAWS ON TAX EXEMPTION

1. *Constitution*

a. Article IX, §1, provides —

In providing for a uniform and equal rate of taxation, the legislature shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes.

b. Article XVI, §16, provides —

The property of all corporations . . . shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes.

2. *Statutory provision*

§192.06(13), Florida Statutes, 1965, provides —

All property, real and personal, of any hospital, licensed by the state board of health, owned and operated by a Florida corporation not for profit, which has been exempt from the payment of taxes to the United States upon the income derived from the operation of such hospital, and used by such hospital for hospital purposes, including but not limited to housing for nurses, interns and other hospital personnel, laboratories, laundries, parking lots, auditoriums, lecture halls, animal houses, pharmacies and other hospital uses; provided that all income of such hospital, remaining after payment of the usual and necessary expenses of operation, including the payment of liens and encumbrances upon its property, shall be used exclusively for educational, charitable or scientific purposes, including the maintenance, improvement or expansion of its facilities.

### 3. *Florida case law*

There are no Florida decisions directly in point.

There are Florida decisions which relate to the subject matter of this suit.

#### a. *Construction of exemption provisions*

(1)   Lummus v. Cushman (Fla. 1949) 41 So.2d 895.

In a suit involving a claim for homestead exemption, Justice Sebring said —

> Exemptions from taxation will be granted by the sovereign only when and to the extent that it may be deemed that such exemptions will conserve the general welfare. Hence it is the rule that a provision of the constitution or a statute will be construed strictly against one attempting to bring himself within the exemption. Rast v. Hulvey, 77 Fla. 74, 80 So. 750; Amos v. Jacksonville Realty & Mortgage Co., 77 Fla. 403, 81 So. 524. But this does not mean that where an exemption is claimed in good faith the provision of law under which the claimant attempts to bring himself is to be subjected to such a strained and unnatural construction as to defeat the plain and evident intendments of the provision. 41 So.2d 895, 897.

(2)   Green v. Eglin AFB Housing, Inc. (Fla. DCA 1st) 104 So.2d 463.

Plaintiff, Eglin AFB Housing, Inc., claimed exemption from the state sales tax. Circuit Judge Edwin L. Jones, of this court, speaking for the First District Court on rehearing, said —

> It is as much the duty of the court to recognize and give effect to exemptions from taxes as it is to enforce the payment of taxes on those transactions not exempted. The legislature has seen fit to favor the state's political subdivisions and the federal government by excluding them from the impact of the taxing statute under factual situations to which the tax could have been made applicable without violating any constitutional immunities, but in which the burden of the tax could be expected to be passed on to the government or governmental agency. The wisdom of this policy is a matter for legislative consideration. The courts are not authorized to restrict the exemption granted by the statute. 104 So.2d 463, 467.

(3)   See also Schooley v. Judd (Fla. App. 2nd 1963) 149 So.2d 587, 590.

#### b. *Use and purpose*

(1)   Daytona Beach Racing and Recreational Facility District v. Paul (Fla. 1965) 179 So.2d 349.

Plaintiff racing facility having leased its land from the city of Daytona Beach, in turn leased part of the facility to a private

corporation, for profit, for operation of a speedway. The racing facility applied for ad valorem tax exemption on the speedway. The assessor's denial was upheld by the circuit court and affirmed by the District Court.

In granting certiorari, the Supreme Court noted that in the bond validation proceedings considered by the court, Justice O'Connell (89 So.2d 349, 351) in examining "public purpose", had said — "The public purpose here seems to be predominate and the private benefit and gain to be incidental."

The court also cited State v. Board of Control, 66 So.2d 209, where it had said —

> The mere fact that some one engaged in private business for private gain will be benefited by every public improvement undertaken by the government or a governmental agency, should not and does not deprive such improvement of its public character or detract from the fact it primarily serves a public purpose. An incidental use or benefit which may be of some private benefit is not the proper test in determining whether or not the project is for a public purpose.

Finally, the court said —

> As stated many times, this Court should accord the legislative discretion great respect in its designation of those facilities and things which serve public purposes and its determination of objects and purposes that may be given tax exemptions within the meaning of the exemption provisions of the Constitution, and especially should deference be accorded where the Legislature may reasonably be presumed to have followed guiding principles enunciated in cases decided by this Court.

### (2)  Maxwell v. Good Samaritan Hospital Association (DCA 2nd Fla. 1964) 161 So.2d 31.

Plaintiff hospital operated a facility for the housing of hospital personnel, some on twenty-four hour emergency call. Ad valorem tax exemption was granted by the lower court. Judge Kanner for the Second District Court, in affirming the circuit judge, observed —

> Since the widely accepted criterion as to tax exemption of such a hospital facility is the element of use, we note as to this phase of the implementing statute, section 192.06(3), that the portion of it preceding the rent proviso definitely requires that the constitutionally specified property must be actually occupied and used for the purpose for which the institution had been or might be organized. This is the basic prescription to be fulfilled for entitlement to tax exemption. 161 So.2d 31, 34.
> * * *
> The property in issue is allegedly utilized for the charitable purposes of the hospital; it is owned by the hospital and is under its control. 161 So.2d 31, 35.

(The court noted (161 So.2d 31, 32) that effective December 31, 1963, §192.06 was amended to add subsection (13) supra, which specifically allows tax exemption for the type of facility under consideration.)

### 4. *Other jurisdictions*

#### a. *Hospital and hospital purposes*

(1) In a leading case involving tax exemption of hospital properties, the Supreme Court of California in Cedars of Lebanon Hospital v. Los Angeles County, 1950, 35 Cal.2d 729, 221 P.2d 31, 15 A.L.R.2d 1045, defined a hospital to be —

> In determining what constitutes "property used exclusively for . . . hospital . . . purposes," it is appropriate first to note generally the nature of a "hospital." A fair and unchallenged description of the nature of such an institution is set forth in plaintiffs' combined brief as follows: "A hospital is primarily a service organization. It serves three groups: the patients, its doctors, and the public. It furnishes a place where the patient, whether poor or rich, can be treated under ideal conditions. It makes available room, special diet, X-ray, laboratory, surgery, and a multitude of other services and equipment now available through the advances of medical science. Essential to the administration of these techniques is the corps of highly-trained nurses and student nurses who are on duty twenty-four hours per day. In the large hospitals there are the interns and residents whose presence makes it possible for the hospital to do a better job. In addition, the hospital . . . must have administration to see that its services function properly and are coordinated, and that patients are received and cared for regardless of the hour or the patient's condition. Nothing can be left to chance because a slip may mean a life or many lives. These facilities also stand ready to serve the community in times of epidemic or disaster." 15 A.L.R.2d 1045, 1051.

The court also said —

> It thus appears that under the rule of strict but reasonable construction, the phrase "property used exclusively for . . . hospital . . . purposes" should be held to include any property which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes; or, in other words, for any facility which is reasonably necessary for the fulfillment of a generally recognized function of a complete modern hospital. 15 A.L.R.2d 1045, 1052.

(2) In Casper v. Cooper Hospital, 98 Atl.2d 605 (Super. Ct., N.J. 1953), the court held that — "A hospital purpose is not to be so narrowly construed as to limit its benefits to patients only."

#### b. *Decision of governing board to be given weight*

(1) In Appeal of Shadyside Hospital, 218 Atl.2d 355 (Pa. Super. 1966), the Pennsylvania Superior Court stated —

The right to say what is reasonably necessary for the occupancy and enjoyment of such a charity is primarily for the governing body of the charity . . . we agree with appellant that ultimately the courts may reject the determination of "reasonable necessity" made by the governing body of the charity where the limit of its discretion has been clearly exceeded . . .

(2) The Wisconsin Supreme Court in Columbia Hospital Association v. City of Milwaukee, 151 N.W.2d 750 (Wis. 1967) observed —

We think the hospital management may determine the purposes of the hospital. What means are necessary to attain the purposes is a question open to determination . . . But, if a secondary purpose of a hospital is generally recognized as a desirable purpose of a modern hospital, it is legitimate for the purposes of tax exemption . . . A reasonable but strict construction of this exemption statute does not require restriction to the primary purpose . . . The majoriy of the cases which have construed tax exemptions for property "used exclusively for the purposes of any hospital" has held that if the general use is for a hospital purpose and the particular use is reasonably necessary, then such facility is held to be exclusively used for hospital purpose although there may be an incidental benefit to others. Perhaps the leading example of this construction is Cedars of Lebanon Hospital v. Los Angeles County (Cal. 1950, 221 P.2d 31, 15 A.L.R.2d 1045) which held property used for housing nurses, interns, resident doctors and key hospital personnel was tax exempt. This was on the ground that it was reasonably necessary for the efficient functioning of the hospital to have such personnel nearby. This case, which popularized the strict but reasonable rule of construction, ruled out the "absolutely indispensable purpose" test and adopted the test of "reasonable necessity to the efficient functioning of the hospital as an organization" to determine the exclusiveness of the use of the property. Under this doctrine, even though there is some incidental benefit to the occupants of residential properties, such benefit does not require that the property be nonexempt when the providing of such housing is for the greater benefit of the hospital.

c. *Decision depends on facts of each case*

In Calais Hospital v. City of Calais, 24 Atl.2d 489 (Me. 1942), the Supreme Court of Maine granted the hospital a tax exemption involving a room in the hospital used by a physician for private patients and hospital duties. The court said —

Decision of this question must undoubtedly depend very largely upon the facts and circumstances of each case. There may be cases where the use of the property of such an owner for other purposes is of such a dominant character, and the occupation by the owner for its own purposes is so incidental and trivial or where the use of the property by the owner for its own purposes is so plainly an attempt to evade taxation — the substantial use and occupation being for other purposes — that such occupation would not be sufficient to make the property exempt from taxation under our statutes.

## D. FINDINGS OF FACT

Plaintiff is a Florida corporation not for profit, doing business as Baptist Memorial Hospital, with its principal office and place of business located in the City of Jacksonville, Duval County. (Stip. para. 1)

Plaintiff operates a hospital licensed by the Florida State Board of Health and plaintiff is exempt from the payment of taxes to the United States upon income derived from the operation of such hospital. (Stip. para. 2)

Defendant Robert A. Mallard is the tax assessor of Duval County. Defendant Clyde H. Simpson is the tax collector of Duval County. Defendant Ed C. Phillips is the tax assessor of the city of Jacksonville. Defendant H. S. Albury is the treasurer of the city of Jacksonville. Defendant Fred O. Dickinson is the comptroller of the state of Florida. (Stip. para. 3)

Plaintiff is the owner of certain real property located in Jacksonville, Duval County, and more particularly described as follows — [legal description omitted] and upon which is located a building known as the Marshall Taylor Doctors Building. This building is adjoining and contiguous to the existing property line of the premises known as the Baptist Memorial Hospital which is owned and operated by the plaintiff. (Stip. para. 4)

Plaintiff is a hospital entitled to tax exemption as a religious, benevolent, educational, scientific and charitable institution devoted to religious, educational, scientific and charitable purposes under the constitution and statutes of the state of Florida, and has been so exempted by the tax assessor of Duval County, and the tax assessor of the city of Jacksonville on its property, which is adjoining and contiguous with the existing property line of the Marshall Taylor Doctors Building property, for the year 1966 and prior thereto. (Stip. para. 5)

Plaintiff corporation is affiliated with the Southern Baptist Hospital, a Louisiana corporation not for profit. The Louisiana corporation is in turn the hospital functionary of the Southern Baptist Convention, a Georgia corporation not for profit. (Stip. para. 6)

During the late 1940's, Southern Baptist Hospital, a Louisiana corporation not for profit, and Southern Baptist Convention, a Georgia corporation not for profit, pursuant to the request of a representative group of members of the Baptist churches in

Jacksonville, selected Jacksonville as the site of a large medical complex. This complex was to be a community-type medical center rendering medical services to citizens of northeast and west Florida and southern Georgia.

From its beginning in the late 1940's, the governing board of the plaintiff and its predecessors have always included in its building program, as a necessary and integral part thereof, a suitable facility for use by physicians occupying medical and dental staff and administrative positions with the hospital to be located on the grounds of the medical complex.

Plaintiff's hospital complex is uniquely located. It is bounded on the north and east by Miami Road and the south central office of the Prudential Insurance Company of America, on the south by a limited access segment of the Jacksonville expressway system and on the west by the St. Johns River. Miami Road, the principal access route to the complex, is intersected by the Florida East Coast Railroad right-of-way over which trains frequently travel. The location of plaintiff's hospital complex is characterized by its physical isolation from facilities providing physicians' offices.

Plaintiff first opened its main hospital building for the admission of patients in September, 1955, with a 100-patient-bed capacity. Subsequent expansion of the facilities has increased its patient-bed capacity to 416.

Shortly after the opening of the hospital, plaintiff's board received urgent requests from staff physicians to provide the office space on hospital grounds for physicians as originally planned. Responding to these requests, plaintiff's board caused a doctors' office building, known as Marshall Taylor Doctors Building, to be constructed on the grounds of the complex by private capital and to be operated under a long-term lease. The building was completed in late 1957. The board's decision to build the doctors' office building was made after determining that there were not adequate facilities for doctors' offices in close proximity to the hospital complex. The board's decision to provide rental space to physicians was based entirely on its desire to improve the quality of patient care rendered by the hospital as well as to strengthen the charitable, scientific and educational functions of the hospital and to promote physicians' hospital administrative participation by insuring that a portion of the hospital's medical staff would be present, geographically, on a full-time basis.

Plaintiff's medical staff consists of 404 physicians, 48 of whom are located in the Marshall Taylor Doctors Building, with the balance located in various parts of Duval County. The Marshall Taylor Doctors Building is located on the medical complex grounds approximately three hundred feet from the main hospital building. Plaintiff plans to construct a second doctors' office building within five years physically linking the Marshall Taylor Doctors Building with the main hospital building. These plans also include the construction on the hospital grounds of a utilities building, a seventeen-story tower addition to the main hospital building, parking garages and other ancillary facilities. Plaintiff is the largest hospital in Duval County. These new additions will increase its total patient-bed capacity from 416 to 778 beds. The first phase of the new construction, that is, the utilities building, tower and accompanying improvements, is already underway. The other phases are to be constructed within five years.

The Marshall Taylor Doctors Building is a five-story building containing 50,233 square feet of floor space. Non-medical tenants occupy approximately 4.5% of the total floor space and include a florist (603 sq. ft.), a sandwich shop (927 sq. ft.) and a pharmacy (630 sq. ft.). A substantial portion of the first floor is occupied by employees of the plaintiff who are neither physicians nor dentists.

The Marshall Taylor Doctors Building was operated by a private landlord from 1957 until April 1, 1965, when the plaintiff took control of its operation. Prior to April 1, 1965, the doctor-tenants in the building constantly complained to plaintiff's board of their dissatisfaction with the private landlord and its management of the building and parking lots. Doctors were unable to acquire additional space in the building because of non-doctor tenants. A dispute over patient parking problems resulted in a lawsuit between the doctor-tenants and landlord. Some doctors moved out of the building, others threatened to do so.

Recognizing that in order for the hospital to render quality patient care, doctors' offices must be located in close proximity to the hospital, and faced with a doctor exodus from the building, in April, 1965, plaintiff's board purchased the leasehold from the private owner and commenced to operate the building. Doctor-tenants were charged $4.20 per square foot, a competitive rate in the community for doctors' office space. The rate has since been increased ten cents per square foot and is still competitive. Under plaintiff's operation of the building, doctor-tenants

are more content, their problems relating to parking and other matters have been resolved; they have a sympathetic ear with hospital officials and better patient care is the net result.

The immediate availability of staff physicians who are tenants of the building on a full-time basis during their working day has contributed substantially to plaintiff's teaching program. Staff doctors who have rental space in the building devote more time and attention to plaintiff's teaching and free care programs than before they moved into it.

The rental of office space within plaintiff's hospital complex to its staff physicians has enabled them by reason of geographic proximity to devote more time to their hospitalized patients. The physical presence and immediate availability of staff physicians who are tenants in the building has been a factor in treating hospital emergency cases. The presence of staff physicians in the building during office hours has enabled plaintiff, unlike other Duval County hospitals, to rely upon them in handling emergency cases, as opposed to employing full-time physicians during office hours.

The rental of office space within plaintiff's hospital complex to staff physicians has also contributed to the quality of the care rendered by these physicians to their patients who are not hospitalized by reason of the immediate availability of plaintiff's medical care services, including facilities for diagnosis, treatment, out-patient care and other related services.

The functions and purposes of hospitals have changed during the last twenty-five years. No longer is a hospital mainly a custodial place for the sick, but now it offers a gamut of professional services. It is primarily a service organization; it serves its patients, its doctors and the public. Unlike the limited role performed by hospitals in the past, to the extent possible, "medical service centers" should be developed which provide a broad spectrum of services — progressive patient care in hospitals in the broadest sense. "Progressive patient care" may be described by two phrases — "The tailoring of hospital services to meet the patient's needs" and "the right patient in the right bed with the right service at the right time". (Plaintiff's exhibit 8 "Elements of Progressive Patient Care", Hospital and Medical Facilities Series, U. S. Department of Health, Education and Welfare, page 1, September, 1962). Progressive patient care encourages the development of a co-ordinated pattern of services and facilities on a community-wide basis. This co-ordinated pattern should have as its core a general hospital providing care

for the short-term patient and outpatient, emergency and organized home care services. (Plaintiff's exhibit 6 "Guidelines and Criteria for Planning Hospital and Related Health Services in New York City", Preamble, pages 1-2). In a heavily populated community such as Jacksonville, hospitals offering progressive patient care are developing, as they should, into medical service centers rendering a wide range of health services.

Such medical service centers should include, in addition to a hospital offering varying levels of care, a building for physicians' offices. The inclusion of or provision for office space for physicians within such a hospital complex is a professionally recognized function of a hospital enabling the hospital to bring together in one geographic location both the personnel and facilities necessary for the modern practice of medicine.

Plaintiff's expert witness, Dr. C. Rufus Rorem, is a well-known authority on physicians' private offices at hospitals. His publication, plaintiff's exhibit 5 entitled "Physicians' Private Offices at Hospitals", Hospital Monograph Series No. 5, published by the American Hospital Association, points up the necessity and advantages of providing for private physicians' offices within such a medical service center to insure quality professional health care. Dr. Rorem's testimony made clear that inclusion of office space for staff physicians within a medical complex such as the plaintiff's, is effective, necessary, desirable and contributes to the orderly achievement of adequate health facilities. Such physicians' office space lays the foundation for a complete health service program of prevention, diagnosis, treatment and rehabilitation. Plaintiff's exhibit 10 entitled "Master Program for Baptist Memorial Hospital", May, 1962, shows (at page 6) the plaintiff's long-established intention to provide professional staff offices for its medical staff. Such physicians' office space was and is to be provided to encourage the medical staff to utilize the diagnostic and treatment facilities of the hospital to the greatest possible extent and to have medical attention immediately available on the site for patient care, education and research.

Plaintiff makes no profit from the operation of the Marshall Taylor Doctors Building, and an annual operating loss has been sustained by plaintiff in connection with its operation of the building since April, 1965. However, it will operate on a break-even basis in the not-too-distant future.

Other than the Marshall Taylor Doctors Building, there are not available in close proximity to plaintiff's hospital complex

facilities providing physicians' office space in quantities sufficient for plaintiff's needs.

The primary use and purpose of the building was on January 1, 1966, and is now, to provide office space for plaintiff's staff physicians in close geographic proximity to plaintiff's hospital, which must be regarded as reasonable, necessary or appropriate to accomplish plaintiff's function in furnishing a complete and efficient hospital service to its patients, its doctors and its community.

Physicians occupying space in the building do not receive any direct pecuniary benefit from such tenancy. The benefit received by the physician is one of convenience, to himself and to his private patient, and is incidental to the primary use of the building by the plaintiff.

Application for exemption for the property known as the Marshall Taylor Doctors Building from ad valorem taxes, pursuant to the provisions of §192.062, Florida Statutes, 1965, was made on or about January 25, 1966, by the plaintiff to the defendant Robert A. Mallard's predecessor in office, Ralph N. Walter. (Stip. para. 7) Plaintiff was thereafter advised by Mr. Mallard that the application for exemption of the building from ad valorem taxes was denied. (Stip. para. 8)

The defendant Mallard, as tax assessor of Duval County, has assessed and levied an ad valorem tax on the building for the calendar year 1966 in the amount of $14,545.12. He has also assessed and levied an ad valorem tax on the building for the calendar year 1967 in the amount of $15,141.28. (Stip. para. 9)

The defendant Ed C. Phillips, as tax assessor of the city of Jacksonville, has assessed and levied an ad valorem tax on the building for the calendar year 1966 in the amount of $7,396.60. He has also assessed and levied an ad valorem tax on the building for the calendar year 1967 in the amount of $7,575.55. (Stip. para. 10)

Plaintiff has paid the taxes assessed by Duval County and the city of Jacksonville for the year 1966 but has not yet paid said taxes for the year 1967. (Stip. para. 11)

The original complaint filed on January 13, 1967, sought an injunction against the respective tax assessors and collectors from imposing and collecting ad valorem taxes on the subject property for the year 1966. Thereafter, and while this action was pending, plaintiff paid the taxes assessed by the city of Jacksonville and

58

Duval County. An amended complaint was filed on March 20, 1967, alleging such payment and seeking a tax refund.

### E. CONCLUSIONS OF LAW

Constitutional provisions and statutes granting exemption from ad valorem taxation should be strictly but reasonably construed, that is, the exemption provision should not be subjected to such a strained and unnatural construction as to defeat the plain and evident intendments of the provision.

Under the rule of strict but reasonable construction, the phrase property "used exclusively" for hospital purposes includes any property which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes; or, in other words, for any facility which is reasonably necessary for the fulfillment of a generally recognized function of a complete, modern hospital.

The evidence shows that the subject property is real property used exclusively for hospital purposes, is exempt from ad valorem taxation within the state of Florida, and is within the meaning of exempt property as specified in article IX, §1, and article XVI, §16, of the Florida Constitution as implemented by §192.06(13), Florida Statutes, 1965.

The phrase "used exclusively" in the foregoing article XVI, §16, of the Florida Constitution, has reference to the primary or predominant use of real property as distinguished from a mere secondary or incidental use. If the incidental use does not interrupt the exclusive use of the real property for exempt purposes but furthers and facilitates or rounds out such purposes, then the real property involved, because of its primary and inherent use, remains exempt from ad valorem taxation.

Plaintiff's primary or predominant use of the Marshall Taylor Doctors Building is reasonably necessary to the fulfillment of plaintiff's hospital purposes. The use of the building by doctor-tenants may be of some private benefit to them, but this private benefit is incidental to the predominant use of the building by the plaintiff and is not the proper test in determining whether the real property involved is being used for a hospital purpose.

Plaintiff's governing board may determine the purposes of the hospital. The right to say what is reasonably necessary for the fulfillment of plaintiff's function as a complete, modern hospital is primarily for plaintiff's governing board. Under the particular

facts of this case, the decision of the plaintiff's governing board to provide office space to physicians in close proximity to plaintiff's hospital should be given great respect by the court.

The providing of physicians' office space in the building by plaintiff is a generally recognized function of a complete, modern hospital, especially where, as in this case, the plaintiff's hospital is uniquely located and there was not on January 1, 1966, and is not now, such office space available in quantities sufficient for plaintiff's needs.

Because plaintiff paid the 1966 city ad valorem taxes assessed against the subject property during the pendency of this suit, defendant city treasurer was on notice of plaintiff's claim for tax refund. However, despite plaintiff's payment and notice to defendant city treasurer, plaintiff would be entitled to a tax refund as the subject property is exempt from taxation and the assessment was void.

As in all ad valorem tax litigation, this case is governed by equitable principles. The argument that all disgruntled taxpayers, whether contesting actual value, green-belt applicability or claiming exemption, should, prior to bringing suit, be required to exhaust their administrative remedies, has merit, if for no other reason than to insure an orderly administration of ad valorem tax procedures. However, in this case, the record shows that plaintiff and the defendant county tax assessor were negotiating about plaintiff's application for exemption far beyond the last date upon which the respective equalization boards concluded their public meetings. Therefore, through no fault of its own, plaintiff was in effect precluded from appearing before said public bodies. Accordingly, the court finds, based upon the facts involved, that plaintiff has exhausted all administrative remedies; it has otherwise met all conditions precedent and is entitled to maintain this suit.

It is, therefore, ordered and adjudged that —

The 1966 and 1967 ad valorem real property assessments on the subject property by the Duval County and city of Jacksonville tax assessors are invalid and void.

The subject property is declared exempt from ad valorem taxation within the state of Florida for the calendar years 1966 and 1967.

The Duval County tax assessor shall remove the subject property from the assessment rolls for the years 1966 and 1967 and shall place the subject property on the rolls of property exempt from ad valorem taxation for these years.

There is due and owing from the Duval County tax collector to the plaintiff the sum of $14,545.12, being a refund of the ad valorem taxes assessed and levied on the subject property for the year 1966.

The city of Jacksonville tax assessor shall remove the subject property from the assessment rolls for the years 1966 and 1967 and shall place the subject property on the rolls of property exempt from ad valorem taxation for these years.

There is due and owing from the city treasurer to the plaintiff the sum of $7,396.60, being a refund of the ad valorem taxes assessed and levied on the subject property for the year 1966.