IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Latrobe Area Hospital                    :
                                         :
                    v.                   : No. 1882 C.D. 2017
Westmoreland County Board                : Argued:  October 15, 2018
of Assessment Appeals, Hempfield         :
Township, Hempfield Area School          :
District and County of Westmoreland      :
                                         :
Appeal of: Westmoreland County           :
Board of Assessment Appeals              :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                 FILED:  July 19, 2019


          Westmoreland County Board of Assessment Appeals (Board)[1] appeals
from the November 20, 2017 order of the Court of Common Pleas of
Westmoreland County (trial court) granting the application for tax exemption filed
by Latrobe Area Hospital, (LAH) for the property it owns at 348 Donohoe Road,
Greensburg, Westmoreland County (Property).  For the following reasons, we
reverse.

Facts and procedural history

          On September 15, 2015, LAH filed a tax assessment exemption
application with the Board, requesting tax exempt status for the Property under

---

[1] Interested parties Hempfield Area School District and Hempfield Township join in the
Board's brief.

Section 8812(a)(3) of the Consolidated County Assessment Law (Law)[2] and Section 204(a)(3) of the General County Assessment Law.[3]

In a supporting memorandum, LAH stated the following. LAH is a Pennsylvania not-for-profit corporation qualified as a charitable corporation within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, 26 U.S.C. §501(c)(3). It owns 59 properties in Westmoreland County, of which 35 have been granted tax-exempt status by the Board, including the main hospital building in Latrobe. Supplemental Reproduced Record (S.R.R.) at 3b-4b.

The Property comprises a 4.02-acre tract of land situated in Hempfield

---

[2] Section 8812(a)(3) of the Law states:

> (a) General rule. — The following property shall be exempt from all county, city, borough, town, township, road, poor, county institution district and school real estate taxes:
>
> *   *   *
>
> (3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds annexed and necessary for their occupancy and use, founded, endowed and maintained by public or private charity as long as all of the following apply:
>
> (i) The entire revenue derived by the entity is applied to support the entity and to increase the efficiency and facilities of the entity, the repair and the necessary increase of grounds and buildings of the entity and for no other purpose.
>
> (ii) The property of purely public charities is necessary to and actually used for the principal purposes of the institution and not used in such a manner as to compete with commercial enterprise.

53 Pa. C.S §8812(a)(3).

[3] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-204(a)(3) (containing substantially similar language).

2

Township that is encumbered by a 16,000-square-foot, one-story building. The building was constructed for use as an outpatient surgical facility; it contains a main lobby, reception area and waiting room area, three operating rooms, two gastrointestinal procedure rooms, eight pre-operative bays, a recovery room, a family waiting room, an office in the reception area, an x-ray room, a billing office, and an employee locker room. There are no doctors' offices on the premises. All of the nurses and office staff are LAH employees. S.R.R. at 3b-4b.

LAH purchased the Property from Laurel Property Associates, LLC, which acquired the Property in 2003 and constructed the facility for use as an outpatient surgical center (the Laurel Surgical Center). Physicians in the Greensburg and Latrobe area used the Property for that purpose until it was sold to LAH on July 22, 2014. S.R.R. at 4b.

The Board denied the application, stating that although LAH operates a facility that is licensed as a hospital, the facility on the Property is licensed as an ambulatory surgical facility and is in competition with similarly licensed commercial enterprises.

LAH appealed to the trial court. As reflected in the trial court's May 31, 2016 order, the parties agreed to bifurcate the matter and to consider first whether the Property is tax-exempt under Section 8812(a)(3) of the Law. Reproduced Record (R.R.) at 126-27. In the event that no exemption was found under Section 8812(a)(3), the trial court would conduct an additional evidentiary hearing to consider whether LAH is entitled to tax exemption as an "institution of purely public charity."[4] *Id.*

---

[4] The Institutions of Purely Public Charity Act, Act of November 26, 1997, P.L. 508, 10 P.S. §§371-385.

3

The trial court conducted a hearing on August 3, 2017. Hempfield School District and Hempfield Township were represented at the hearing as interested parties. In his opening remarks, counsel for the Board clarified that, "The issue isn't whether [LAH] is an exempt institution; the issue is whether the [facility] on Donohoe Road is a hospital." R.R at 58.

LAH called seven employees of Excela Health[5] as witnesses and submitted more than 30 exhibits. No other party offered witness testimony. After the hearing, the parties submitted proposed findings of fact and conclusions of law, proposed orders, and legal argument.

Michael Busch, the executive vice president and chief operating officer of Excela Health, testified that the ambulatory surgical center is used exclusively for providing medical services and procedures for patients of LAH on an outpatient basis. The outpatient procedures performed at the ambulatory surgical center are the same type of ambulatory surgical procedures that continue to be performed at LAH's main hospital location, which is located about seven miles away.[6] The operation of the ambulatory surgical center is subject to the same policies and procedures that govern all of LAH's facilities. All of LAH's policies concerning open admissions, patient financial assistance and discounts, and billing and collection apply equally to the ambulatory surgical center.

---

[5] Excela Health is a non-profit organization that includes three acute care hospitals (Frick Hospital in Mount Pleasant, Latrobe Area Hospital in Latrobe, and Westmoreland Hospital in Greensburg), nine outpatient rehabilitation centers, six community health care centers, imaging and blood testing sites, home care and hospice, physician practices, and a medical equipment company. https://www.excelahealth.org/patients-and-visitors/excela-health-locations (last visited June 25, 2019).

[6] The main hospital facility is located at One Mellon Way, Latrobe, Westmoreland County.

4

Denise Addis, director of value-based quality for Excela Health, testified that her duties include regulatory compliance and licensing. She stated that the license issued for Laurel Surgical Center by the Pennsylvania Department of Health is issued in the name of LAH as the facility's owner. She explained that Department of Health regulations require ambulatory surgery centers to be separately licensed and that ambulatory surgical centers are governed by separate and distinct regulations. She testified that LAH obtained exceptions to certain licensing requirements from the Department of Health based on infrastructure shared "between Latrobe and Laurel." R.R. at 72.

Addis referenced minutes of the Board Quality Committee of the Board of Trustees of Excela Health (board quality committee), Ex. 22, S.R.R. at 121b, as reflecting that the "board quality committee is included under the same committee as the Laurel Surgical Center." R.R. at 73. Although the question was differently phrased, it appears that Addis meant that the same Excela Health committee provides oversight for the operations of the ambulatory surgical center and the main hospital. In fact, the minutes of the board quality committee specifically address the three hospitals, Norwin Medical Commons, and Laurel Surgical Center. S.R.R. at 121b-22b.

Referencing the agenda for the Excela Health patient safety committee, S.R.R. at 128b-29b, Addis added that the "patient safety officer at Latrobe is the patient safety officer at Laurel." *Id.* The document reflects that the same individual also is the patient safety officer at Frick Hospital and references the same five entities as the board quality committee. S.R.R. at 128b. Additionally, the captions of the various Excela Health committee reports separately list Frick Hospital, Latrobe Area Hospital, Westmoreland Hospital,

5

Norwin Medical Commons, and Laurel Surgical Center. *See*, *e.g.*, S.R.R. at 121b, 128b-30b, 135b.

Peg McGowan, Excela Health vice-president of operations, testified that she works with a staff of 400 employees related to cardiovascular services, interventional radiology, and operating suites and operating rooms in the ambulatory surgical centers. Her duties include patient assignment at the main hospital and the ambulatory surgical center. She explained that the location for the procedures is determined by the treating physician considering both the availability of operating rooms and the patient's risk factors, with patients having high risk factors typically assigned to the hospital location. McGowan testified that physicians do not have to be employees of LAH or Excela Health to have operating privileges at Excela Health locations. R.R. at 74-76.

Christopher Kohler testified that he is the director of the office of medical affairs for Excela Health and is responsible for credentialing physicians who can provide services at any Excela Health facility. He stated that the medical staff by-laws for Excela Health apply to all of the Excela Health hospitals, including the main hospital location for LAH and the Laurel Surgical Center. R.R. at 76-77.

Joyce Noel testified that she is employed by Excela Health as its director of revenue cycle. She stated that the procedures for billing are the same for services provided at the main hospital and the ambulatory surgical center. Referencing supporting documentation, she noted that physicians use the same health insurance claim forms to bill for procedures at both locations, and the Laurel Surgical Center and the main hospital use the same form (UB-04) to invoice for services. Noel testified that monies received for procedures performed at both

6

locations are posted to the same LAH account and are broken down by patient type; patients at the Laurel Surgical Center are identified as type "LSC." R.R. at 76-79; S.R.R. at 282b-85b.

Thomas S. Albanesi, Jr., Excela Health executive vice president and chief financial officer, testified that there is no separate budget for the ambulatory surgical center. Rather, all revenue from the surgical center is treated and used in the same manner as other LAH revenue, with the same combined system used for all financial reporting. As an example, Albanesi referenced a 2015 IRS form 990 (Return of Organization Exempt From Income Tax) filed by Excela Health, and he testified that the total amount of bad debt, charity, and uncompensated care reported for LAH includes amounts attributable to the ambulatory surgical center. R.R. at 79-84.

Michaleen Smith, a real estate administrator for Excela Health, testified that she prepared a chart comparing the procedures performed at the Laurel Surgical Center with procedures performed at five other outpatient surgery centers in Westmoreland County: 20/20 Surgery Center; Aestique Ambulatory Surgical; Delmont Surgery Center; Mt. Pleasant Surgery Center; and Westmoreland Dermatology Offices. R.R. at 63; S.R.R. at 27b. Smith said she first made a list of the procedures performed at the Laurel Surgical Center, and then she called these other centers and asked the person who answered the phone what procedures they performed, marking the chart accordingly. Smith stated that she created the chart in January 2017 and updated it in July 2017 after looking at the websites of the other surgical centers. S.R.R. 28b.

Smith acknowledged that the orthopedic surgery, ear, nose, and throat surgery, pain management surgery, plastic surgery, podiatry surgery, urology

7

surgery, gastrointestinal surgery, general surgery, oral surgery, gynecological surgery, and head and neck surgery performed at Mt. Pleasant Surgery Center are also performed at the Laurel Surgical Center. R.R. at 64. She agreed that the pain management surgery, ophthalmology surgery, cataract removal surgery, YAG laser treatment, gynecological surgery, gastrointestinal surgery, endoscopy procedures, and colonoscopies performed at Aestique Surgical Center also are done at Laurel Surgical Center. R.R. at 65. She testified that the Delmont Surgical Center performs plastic surgery along with anesthesia, as does Laurel Surgical Center. *Id.* In addition to Smith's testimony, the chart reflects that Laurel Surgical Center performs ophthalmology surgery, as does 20/20 Surgery Center, and performs MOHS procedures and excisions as offered by Forefront Dermatology. S.R.R. at 28b.

Trial court opinion

In its November 20, 2017 opinion and order, the trial court incorporated and adopted the Findings of Fact and Conclusions of Law submitted by LAH and held that LAH met its burden of proving entitlement to tax exemption for the Property under Section 8812(a)(3) of the Law. The trial court specifically noted that the same outpatient ambulatory surgical procedures performed at LAH's main hospital are performed at Laurel Surgical Center. The trial court emphasized, "the Laurel Surgical Center operations are subject to the same policies and procedures *in effect at all of the Hospital's facilities*, including its main facility . . . in Latrobe." Trial court op. at 5 (emphasis added).[7] Additionally, the trial court

---

[7] The trial court appears to refer to both LAH and Excela Health as the "Hospital," stating, for example, "All of the committees at the Hospital also provide oversight for the operations at Laurel Surgical Center." Trial court op. at 6. As established by the testimony the
**(Footnote continued on next page…)**

8

found it significant that "the Hospital [coordinates] assignment of patients and staff" and that all billing and payments are processed in the same manner "at the main Hospital at One Mellon Way and at Laurel Surgical Center." Trial court op. at 6. "Most importantly," the trial court observed that there is no separate budget for the Laurel Surgical Center. Trial court op. at 7. Instead, as reflected on Excela Health's IRS submission, financial data for the Laurel Surgical Center is combined in the data supplied for LAH.

The trial court rejected the Board's complaint that LAH provided no testimony from Laurel Surgical Center employees concerning the use of the Property, stating, "From the Hospital's perspective, since Laurel Surgical Center is considered part and parcel of it, the Hospital is as competent to testify to the activities and procedures conducted at its facility." Trial court op. at 8.[8]

Citing *Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610 (Pa. 2010), the trial court stated that in interpreting the language of Section 8812(a)(3), the words "with the grounds annexed and necessary for their occupation and use," must be given their plain and ordinary meaning, and, additionally, must be construed and interpreted in light of the purposes the General Assembly sought to achieve in enacting the statute. Trial court op. at 8. "[T]aking an overall view," the trial court concluded that it was both logical and consistent with the overall purpose of the statute to hold that

---

**(continued…)**

trial court cited, the committees are Excela Health committees, not LAH committees. *See e.g.*, S.R.R. at 121b, 128b-30b, 135b.

[8] Again, the trial court does not distinguish LAH, a separate corporate entity within the Excela Health system, from Excela Health, the entity by which the witnesses were employed.

property eligible for the tax exemption includes buildings and grounds that are part of and necessary for the charitable purposes of LAH, even if such property is located separate and apart from LAH's main hospital location. Trial court op. at 8-9.

In support, the trial court also cited *Saint Joseph Hospital v. Berks County Board of Assessment Appeals*, 709 A.2d 928, 938 (Pa. Cmwlth. 1998), which held that a physical therapy clinic was entitled to tax exemption as an institution of purely public charity under *HUP*[9] and Section 204 of the General County Assessment Law[10] where the clinic was part of the hospital's physical medicine department, had the same open admissions policy, and did not have a separate budget.

Although the trial court recognized that LAH bore the burden of proof in this proceeding, the trial court nevertheless stressed that LAH was the only party to present evidence concerning procedures performed at five other ambulatory surgical centers, relevant to whether the Property is "used in such a manner as to compete with commercial enterprise." 53 Pa. C.S §8812(a)(3)(ii). The trial court emphasized that once LAH provided, "at a minimum, circumstantial evidence of it not competing with commercial enterprise," the Board failed to offer any evidence regarding the locations of other ambulatory surgical centers, whether the opening of the Laurel Surgical Center impacted the number of patients they served, or whether they suffered any decrease in profits. Trial court op. at 9-10. Ultimately, the trial court cited the testimony and exhibits offered by LAH, which "illustrate[]

---

[9] *Hospital Utilization Project v. Commonwealth*, 487 A.2d 1306 (Pa. 1985).

[10] 72 P.S. §5020-204.

the substantial differences in the services being offered" at Laurel Surgical Center and other ambulatory surgical centers in Westmoreland County, to support its conclusion Laurel Surgical Center "has not impacted any other ambulatory service centers." Trial court op. at 9.

Finally, the trial court rejected the Board's assertion that the Property is not entitled to tax exemption under 53 Pa. C.S §8812(a)(3)(ii) because it is licensed as an ambulatory surgical center, rather than as a hospital, by the Department of Health.[11] The trial court reasoned that the Department of Health does not interpret real estate tax exemption statutes and consequently, its regulatory authority does not control determinations in this matter.

Discussion[12]

Initially we note that an entity claiming entitlement to a tax exemption has the burden of proving that it comes within the statutory exemptions. *Wayne County Board of Assessment v. Federation of Jewish Philanthropies*, 403 A.2d 613 (Pa. Cmwlth. 1979). Where a taxing provision is an exemption, it is to be strictly construed against taxpayers. *Lehigh Valley Rail Management LLC v. County of Northampton Revenue Appeals Board*, 178 A.3d 950, 957 n.11 (Pa. Cmwlth.

---

[11] *See* Section 802.1 of the Health Care Facilities Act, Act of July 19, 1979, P.L. 130, *as amended*, added by the act of July 12, 1980, P.L 655, 35 P.S. §448.802a, separately defining "hospital" and "health care facility."

[12] Our scope of review is limited to determining whether the trial court's findings are supported by substantial evidence or whether the trial court committed an error of law or abused its discretion. *Jameson Care Center v. County of Lawrence*, 753 A.2d 902 (Pa. Cmwlth. 2000).

The Board's issues on appeal are not addressed separately in its brief and are rephrased for clarification.

11

2018). Additionally, where the words of a statute are clear and free from all ambiguity, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. *Appeal of Infants Welfare League Camp*, 82 A.2d 296 (Pa. Super. 1951) (holding that the substantially similar language contained in former Section 203 of the Fourth to Eighth Class County Assessment Law,[13] at former 72 P.S. §5453.203, is free from all ambiguity). Unless the statutory language is ambiguous, this Court cannot supply omissions in a statute or speculate as to legislative intent. *Id.*

On appeal, the Board argues that the trial court erred in determining that the Property is exempt from real estate taxes as a "hospital" under 53 Pa. C.S. §8812(a)(3). The Board also asserts that the trial court misapplied the burden of proof on the issue of whether the Property is used in a manner that competes with commercial enterprise.

The threshold question is whether the Laurel Surgical Center is a "hospital" as contemplated by Section 8812(a)(3) of the Law. The Board argues that the Property is not entitled to tax exemption under Section 8812(a)(3) as a "hospital" because the Laurel Surgical Center is licensed as an ambulatory surgical center, not a hospital. The Board also notes that the Health Care Facilities Act defines a hospital as an institution established for the purpose of providing services to inpatients, and it defines a licensed surgical facility as a facility not located on the premises of a hospital that provides multispecialty outpatient surgical treatment. 35 P.S. §448.802a. LAH responds that the trial court correctly determined that LAH's ownership, control, and financial integration of Laurel

---

[13] Act of May 21, 1943, P.L. 571, *as amended.*

12

Surgical Center's operations was sufficient to support a tax exemption for the Property under Section 8812(a)(3).

The Law does not define "hospital." The general rule is that when a statute does not define a term, Section 1903(a) of the Statutory Construction Act, 1 Pa. C.S. §1903(a), requires it to be construed according to its common and approved usage. *Mosaica Education, Inc. v. Pennsylvania Prevailing Wage Act*, 925 A.2d 176, 183 n.13 (Pa. Cmwlth. 2007). Additionally, where the words of a statute are not explicit, the General Assembly's intent may be ascertained by considering other statutes concerning the same or similar subjects. *See* Section 1921(c)(5) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(c)(5); *Worobec v. Unemployment Compensation Board of Review*, 536 A.2d 467 (Pa. Cmwlth. 1986) (considering the definitions in Section 903 of the Agricultural Area Security Law, Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §903, to determine that the term "agricultural labor" includes working with horses).

Webster's Third New International Dictionary 1033 (1986) (emphasis added) defines "hospital" as: "a charitable institution for the needy, aged, infirm, or young" and "an institution or place where sick or injured persons are given *medical or surgical* care[.]" Stedman's Medical Dictionary 726 (25th ed. 1990) defines "hospital" as an "institution for the treatment, care, and cure of the sick and wounded, for the study of disease, and for the training of physicians, nurses, and allied health personnel." As the Board previously noted, Section 802.1 of the Health Care Facilities Act, 35 P.S. §448.802a (emphasis added), defines "hospital" as an "institution . . . established for the purpose of providing to *inpatients* . . . diagnostic and therapeutic services for the care of persons who are injured,

13

disabled, pregnant, diseased, sick or mentally ill . . . ."[14]  Each of these sources defines hospital as an institution providing more than ambulatory outpatient surgery.

Furthermore, while we agree with the trial court that the provisions of the Health Care Facilities Act are not dispositive, we must acknowledge that its definition of hospital is consistent with the word's common and approved usage. As the term is commonly understood, a hospital's distinguishing features include the availability of medical care around the clock, seven days a week, 365 days a year. Another distinctive feature is the existence of multiple departments; common examples include emergency medicine, critical care, medical laboratory, diagnostic imaging, general surgery, outpatient surgery, oncology, maternity, cardiology, neurology, occupational therapy, pharmacy, admissions, records, and housekeeping.

When LAH purchased the ambulatory surgical center in 2014, it was an operating business owned by individual physicians. R.R. at 61, 84. LAH's position is that the ambulatory surgical center became a "hospital" when LAH purchased it and assumed control of its operation. We are not persuaded that a hospital's purchase of a separate business entity and its integration and control of the entity's activities is sufficient to transform a business enterprise, whether an ambulatory surgical center, a diagnostic imaging center, or a medical laboratory, into a "hospital." Furthermore, we reject LAH's contention that the statutory

---

[14] The same provision defines "ambulatory surgical facility" as a facility "not located upon the premises of a hospital which provides specialty or multispecialty outpatient surgical treatment.  .  .  . For purposes of this provision, outpatient surgical treatment means surgical treatment to patients who do not require hospitalization . . . ."  35 P.S. §448.802a.

exemption for a "hospital" under 53 Pa. C.S §8812(a)(3) applies to *all properties* owned by LAH. LAH's argument would extend the statutory tax exemption for "a hospital" to *any one of the numerous services typically offered by a hospital at its main facility*, such as a pharmacy, rehabilitation/physical therapy, laboratory, and ambulance service. Had the General Assembly intended the exemption to apply to *all property owned by hospitals*, it would have clearly stated as much. *See, e.g.*, Section 8812(a)(4) ("All property of a charitable organization"); (11) ("All real property owned by one or more institutions of public charity").

If the statutory exemption for "hospitals" does not extend to all property a hospital owns, the Property is not exempt from taxation unless it qualifies as "grounds annexed and necessary for [the] occupancy and use" of the main hospital, as contemplated by Section 8812(a)(3) of the Law. We conclude it does not.

The right to a tax exemption must be clearly established. *In re Winchester Group*, 687 A.2d 52, 55 (Pa. Cmwlth. 1996). Here, LAH offered no evidence that the Property was reasonably necessary for the occupancy and use of the main hospital's outpatient surgery department. *Cf. Wesley United Methodist Church v. Dauphin County Board of Assessment Appeals*, 889 A.2d 1180 (Pa. 2005) (parking lot was reasonably necessary for the occupancy of the church and thus was tax exempt); *Shadyside Hospital Appeal*, 218 A.2d 355 (Pa. Super. 1966) (residence for nurses was a reasonable necessity); *Allegheny General Hospital v. Board of Property Assessment*, 217 A.2d 796 (Pa. Super. 1966) (although not all properties were contiguous, evidence established that they were used for personnel

15

living quarters, parking, and support of the hospital's dietary department).[15] Moreover, because LAH does not separately account for the ambulatory surgical center's revenues and expenses, there is no evidence to establish that it satisfies the criteria for exemption in Section 8812(a)(3), subsections (i) (how the revenue derived by the entity is applied) and (ii) (whether property of a purely public charity is used to compete with commercial enterprise).[16]

The Board next argues that the trial court's finding that the Property is not used "in such a manner as to compete with commercial enterprises" is not supported by the record. According to the Board, the record evidence demonstrates that the Laurel Surgical Center unfairly competes with similar entities that offer some or most of the same procedures but are not subsidized by a tax-exempt entity. Although LAH submitted testimony and other evidence intended to show that the Laurel Surgical Center does not compete with commercial enterprise, the evidence actually reflects that the Laurel Surgical Center performs the same or similar procedures as are performed by each of the outpatient surgical centers identified by LAH. Moreover, LAH offered no

---

[15] As we have previously recognized, there is a limit to the amount of land that may be adapted to further the accomplishment of a tax-exempt entity's charitable purpose. *Winchester Group*, 687 A.2d at 56 (quoting *Shadyside Hospital*, 218 A.2d at 357). "Although the right to determine what is a reasonable necessity for the occupancy and enjoyment of a charity is primarily for the charity's governing body," courts will not give unlimited deference to a taxpayer's characterization. *Winchester Group*, 687 A.2d at 56; *Presbyterian-University of Pennsylvania Medical Center v. Board of Revision of Taxes*, 357 A.2d 696, 698 (Pa. Cmwlth. 1976). "We must also be mindful that the [taxing body] and its taxpayers have an interest in safeguarding the [taxing body's] tax base." *Id.*

[16] We agree with the Board that the trial court's reliance on *Saint Joseph Hospital* is misplaced, as that decision did not address contested eligibility of the taxpayer as a hospital and, significant to the court's analysis, the taxpayer's status as a purely public charity was established.

16

evidence comparing patient populations, the percentage of Medicare or Medicaid patients that are treated at each facility, what expenses attributable to the Property, if any, are subsidized by LAH, or what expenses at each facility are attributed to free care or subject to reimbursement from health insurance, workers' compensation, etc.

LAH responds that the proper focus is the manner in which the Property is used, not the existence of competition with private enterprises. However, the requirement that the property not be used in a manner that competes with commercial enterprise is a distinct requirement, irrespective of whether the other statutory criteria are satisfied. Even if we concluded that the Property was reasonably necessary to the occupancy and use of the main hospital, LAH was required to demonstrate that Laurel Surgical Center does not compete with other commercial enterprises, and it failed to do so.

In *Jameson Care Center, Inc. v. County of Lawrence*, 753 A.2d 902 (Pa. Cmwlth. 2000), we held that a non-profit corporation that operated a physical rehabilitation center competed with for-profit rehabilitation centers and, consequently, was not entitled to real estate tax exemption under Section 202(a)(3) of the Fourth to Eighth Class County Assessment Law, 72 P.S. §5453.202(a)(3). Specifically, this Court noted that Jameson, as well as a for-profit rehabilitation center, submitted a bid for a contract to provide rehabilitation services to local school districts. We also noted that Jameson was similar in nature to a for-profit rehabilitation center in the county, and that one of Jameson's witnesses testified that the services Jameson provides were also provided by other rehabilitation centers in the same county. LAH attempts to distinguish *Jameson Care Center* on the basis that it involved competitive bidding, but does not address the remainder

17

of our analysis in that case. However, as the trial court observed, the *only* evidence concerning the issue of competition was offered by LAH, and it merely establishes that Laurel Surgical Center offers the same services as several other ambulatory surgical centers. In other words, LAH did not meet its burden to prove that it is not used in such a manner as to compete with commercial enterprises. 53 Pa. C.S. §8812(a)(3).

In conclusion, when LAH purchased the Property in 2014, it was one of several ambulatory surgical centers in Westmoreland County, and it remains so today. Its ownership has changed, but its use is the same. Neither a change in identity of the owner nor the commingling of administrative functions and finances supports a determination that the Property is a hospital. The exemption at Section 8812(a)(3) of the Law does not apply automatically to all property that is owned by a hospital. Additionally, LAH bears the burden to prove that the ambulatory surgical center does not compete with commercial enterprise and did not present sufficient evidence to meet that burden. The trial court's contrary finding is not supported by substantial evidence.

Accordingly, we reverse the trial court's order and we remand the matter to the trial court for further proceedings.

_____
MICHAEL H. WOJCIK, Judge

Judge Brobson dissents and wishes to be so noted.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Latrobe Area Hospital : 
 : 
          v. : No. 1882 C.D. 2017
Westmoreland County Board : 
of Assessment Appeals, Hempfield : 
Township, Hempfield Area School : 
District and County of Westmoreland : 
 : 
Appeal of: Westmoreland County : 
Board of Assessment Appeals : 

# O R D E R

AND NOW, this 19th day of July, 2019, the order of the Court of Common Pleas of Westmoreland County (trial court), dated November 20, 2017, is REVERSED, and this matter is REMANDED to the trial court for further proceedings.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge